Albert M. EVERETT, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, United States of America, Defendant.

Civ. A. No. 818.

United States District Court
N. D. Florida,
Tallahassee Division.

Nov. 27, 1961.

Wilfred C. Varn of Ervin, Pennington & Varn, Tallahassee, Fla., for plaintiff.

C. W. Eggart, Jr., Acting U. S. Atty., Pensacola, Fla., for defendant.

CARSWELL, Chief Judge.

Plaintiff and defendant move this Court for summary judgment for the purpose of reviewing the final decision of the Secretary of Health, Education and Welfare.

On October 13, 1958, the plaintiff requested a hearing after a determination by the Bureau of Old Age and Survivors Insurance, Social Security Act, which denied his application for old age insurance benefits. The Bureau determined that plaintiff did not have the requisite quarters of coverage as defined in the Social Security Act inasmuch as the amounts of self-employment income for the calendar years 1956 and 1957 could not be included since it found that plaintiff was not a member of the partnership known as Everett Brothers Company during those years.

A hearing was held on February 8, 1960, before a hearing examiner of the Office of Hearings and Appeals. Prior to the time he could prepare his decision, his status changed and he was designated a member of the staff of Office of Appeals Council in Washington, D. C. The matter was transferred to another hearing examiner and a further hearing was held on June 1, 1960.

The plaintiff was present at the hearing and was represented by his certified public accountant. He was accompanied by his son, Cary Everett, who also testified at the hearing.

The general issue to be determined was whether or not the plaintiff on the date of filing his application was a fully insured individual under the provisions of the Social Security Act, as amended, and thus entitled to old age benefits as provided in the Act. The principal issue for determination was whether or not the plaintiff was a bona fide member of

the partnership known as Everett Brothers Company during the calendar years 1956 and 1957. If he were, he was covered.

Upon the following findings of fact, the Secretary found that plaintiff was not a member of the partnership, and was, therefore, ineligible for Social Security benefits:

Cary A. Everett and Russell M. Everett are sons of Albert M. Everett, plaintiff. In April, 1947, Cary and Russell Everett formed a partnership known as Everett Brothers Company for the purpose of operating a sawmill. The partnership purchased logs delivered at its mill; sawed them into dimension building materials which it sold to the public.

The plaintiff, father, financed the formation of the partnership and had been its source of financing since its formation. In addition to his financial assistance the plaintiff had from time to time advised with the sons as to the profitable operation of the partnership affairs. Prior to the year 1956 plaintiff had received no financial remuneration from the partnership.

In 1956 the partnership owed plaintiff $18,611.44, which was carried on the books of the partnership as an indebtedness. At the suggestion of the accountant for the partnership Cary and Russell allegedly entered into an oral agreement with the plaintiff, whereby plaintiff became a member of the partnership with a 20% share. Plaintiff made no new capital contribution to the business, but the books of the partnership were changed so as to eliminate the indebtedness of $18,611.44 and showed that plaintiff's capital account was in the amount of $18,611.44.

The evidence establishes that during the year 1956 the net earnings of the alleged partnership were $11,846.54, of which amount the plaintiff, as shown by the records of the company, was credited with $4,227.16.[1] Of this amount $4,200

1. There were minor discrepancies in the findings of fact as found by the hearing examiner as opposed to those found by the Appeals Council relative to the earn-

represented payment for extra services performed and the balance was represented as 20% of the net earnings, plaintiff's distributive share. In his personal income tax return for 1956 plaintiff reported a $3,310.75 amount, which was attributed to income from an oil lease. He withdrew nothing from the business and the amounts of $3,310.75 and $4,227.16 were entered on the partnership books thus increasing the plaintiff's capital account to $26,147.35. On his individual income tax return for 1956 plaintiff reported the amount of $4,252.57 as his income from the partnership along with the additional amount of $3,310.75 as income for oil lease receipts.

The net earnings of the partnership for the year 1957 were reported as $8,-910.15. Plaintiff was credited on the records of the company with the sum of $4,302.03. Of this amount $4,200 represented payment for extra services rendered and $102.03 represented his 20% distributive share. On his 1957 individual income tax return plaintiff reported $4,-302.03 from the partnership plus $2,496 as income from oil lease receipts. His capital account showed an additional contribution of $6,796.03 and that amount thereby increased plaintiff's capital account to $32,943.78. On December 31, 1957, the books of the partnership show this amount as having been withdrawn by plaintiff. In actuality, however, it was not withdrawn, but was re-established on the partnership's books as an indebtedness of the partnership.

It is at this time that the purported partnership between plaintiff and his sons was terminated. During the period in question, plaintiff received neither actual cash nor did he upon dissolution receive any actual cash for his interest in or earnings in the partnership. Since dissolution, however, plaintiff has received the amount of money represented by his capital account.

The Secretary stated that the testimony of Cary Everett was extremely vague and inconclusive on the question of plaintiff's activity in the management of the affairs of the partnership and plaintiff's testimony was likewise vague and inconclusive.

"The testimony relating to the reason for dissolution of the alleged partnership was also vague and inconclusive. Cary A. Everett could not, or did not, submit any direct testimony as to the reason for its dissolution, in fact, his testimony would indicate the need for retention of the applicant as a member of the alleged partnership."

" * * * Neither (Cary nor the plaintiff) could specify any work done, or responsibilities assumed by the claimant during 1956 and 1957, *in addition to or different from that previously done or assumed by him."* (Emphasis added.)

Since the evidence did not show any difference in the activities of plaintiff at the time he was a partner from those activities or services rendered prior to the formation of the partnership or after the dissolution, the Secretary apparently concluded that the services rendered were not legitimate services on behalf of the partnership.

Cary A. Everett testified that he had sole responsibility for the management of the affairs of the original partnership since the year 1953. He stated that the

ings of the partnership and plaintiff in the years 1956 and 1957. The hearing Examiner found that the partnership's net income for 1956 was $8,495.79 and the plaintiff's share $4,219.16. The partnership's 1957 tax return shows a net income of $8,900.15, of which plaintiff's share was $4,302.03. The Court does not consider these discrepancies between the hearing examiner and the Appeals Council to be material.

The Appeals Council in an effort to clarify certain findings of fact made by the hearing examiner set forth additional findings of fact, not specifically made by the hearing examiner from evidence which appears in the record. The Court has incorporated the findings of fact from both decisions in the text of the Court's decision above.

plaintiff was never held out to the suppliers, creditors, or the public generally as a member of the partnership. His explanation for this fact was that the partnership had no creditors except plaintiff himself. This fact was controverted by statements made on the partnership's tax return.

The Secretary found that other than the alleged oral agreement to become partners that there was nothing to indicate its existence other than the entries in the partnership's books. He found that the amounts attributed to plaintiff for his services or distributive share not having been paid in cash were merely book transfers.

The decision of the Secretary stated that there was insufficient evidence with respect to the formation of the partnership and the reason for its formation; all financial transactions were of "paper variety" only. He could not find any advantage accruing to the partnership by plaintiff's admission as a partner and could find no reason why plaintiff would want to be a partner.

This Court does not consider the statements as footnoted below [2] to be inferences by which the Court is bound. At

2. "The applicant contends that he became a member of this partnership, effective January 1956, the interest of the partners being established on the following basis: Cary A. Everett and Russell M. Everett each a 40% interest and Albert M. Everett a 20% interest. The evidence of record discloses no negotiations leading up to the formation of the alleged partnership and *no valid reason for its formation.* The evidence pertaining to the financial phase of the formation of the alleged partnership is vague and inconclusive, the sole fact established being that the 20% interest of the applicant was paid for by transferring from the accounts and notes payable account of the former partnership of the necessary sum of money to its capital account. In fact, it is worthy of serious consideration, that during the life of the alleged partnership no actual transfer of money was involved between the partnership and the claimant (plaintiff) as all financial transactions were purely of the 'paper variety'. In this connection the applicant on February 5, 1958, submitted a written statement, which reads in part as follows: 'The Everett Bros. Co. owes me a considerable sum of money which has been carried on an open a/c & don't know how this debt was connected to my partnership interest in 1956 & 1957; nor do I know how partnership interest was discontinued at end of 1957. I imagine that debt shows on an open a/c again.'"

*"What did the original partnership have to gain by admitting the claimant as a partner? He had, according to the evidence, financed the affairs of the partnership since its formation during April, 1947. There is of record no evidence indicating that he was demanding that he be admitted as a partner, otherwise, he would discontinue his financial assistance. His alleged admission as a partner did not strengthen the financial status of the original partnership, inasmuch as he paid in no additional cash capital, and certainly he did not enhance the credit of the partnership since his admission was never announced to the public or to the suppliers of materials to the partnership. So far as the affairs of the original partnership were concerned and its management, the admission of the applicant as a partner made no preceptible (sic) difference.*

*"How did the claimant hope to enhance his financial status by becoming a member of the original partnership?* The answer to this question is obvious. *He did not become a member of the original partnership for financial gain, inasmuch as he did not receive any actual cash benefit as a result of his becoming a member, and it is not reasonable to assume that he would enter into a partnership agreement without having an understanding as to whether or not he would receive his share of such partnership's earnings in cash or by credit on the records of such partnership. The evidence of record further fails to establish why the claimant would assume the substantial risk of becoming a partner, in view of the limited profit that would result by his becoming a member of the original partnership.* Even though his becoming a member of the partnership was never announced to the public, there was always present the danger that some creditor would discover this fact."

"Upon the evidence of the record being carefully scrutinized and the rule of sound reason and good business judgment applied, it is impossible to conclude that a partnership was formed as contended.

best these statements are speculation and the conclusions drawn from the speculation have no valid legal basis.

The Secretary concluded that the evidence failed to establish that plaintiff performed any additional services for or on behalf of the partnership for the years 1956; that he did not own any capital interest in the partnership and, therefore, that the plaintiff was not a partner with his sons for those calendar years.

42 U.S.C.A. § 405(g) provides for review of decisions of the Secretary of Health, Education and Welfare as follows:

"* * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

"* * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

■■ Thus, the power of the Court is limited on review and a hearing *de novo* may not be had on the evidence. In the review of any administrative decision, however, it was never intended that the Courts surrender their conventional judicial function. While the statutory finality of the administrative findings necessarily extends to reasonable inferences and conclusions drawn from the evidence, nevertheless if it is apparent that the administrative decision is based upon conclusions which were not reasonably reached or which resulted from improper conclusions of law which were unsupported by the evidence, the Court may and should correct these errors. Pruitt v. Flemming, 182 F.Supp. 159 (D. C.S.D.W.Va., 1960).

The "substantial evidence" rule has been involved with particular reference to review of National Labor Relations Board decisions. The majority of the cases applying the "substantiality" test concerns appeals from orders of this agency. See "Administrative Law: The 'Substantial Evidence' Rule". American Bar Association Journal, October, 1958.

In this article the author states:

"Further confusion is caused by the circumstance that too many lawyers—both on and off the Bench—seek to use the 'substantial evidence' test as a touchstone for the decision of cases where the question does not really involve the correctness of the finding of facts, but rather the reasonableness of the inference drawn from those findings. In the latter instance, the 'substantial evidence' rule does not properly apply at all."

"In legal theory, the 'substantial evidence' rule is applicable only where it is the agency's findings as to the 'basic' facts that are under attack.

"When the point of attack concerns the reasonableness of the conclusions inferred by the agency from its findings of basic fact, then the substantial evidence rule does not properly apply. The issue in such cases is whether the agency's inference 'rests on erroneous legal foundations' or is 'without reasonable foundation'."

■ The Social Security Act was intended to remedy the general national ill of unemployment, whether it results from lack of work or because of disabilities of age. Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937).

It has been generally held that the Act should be liberally construed in favor

---

In fact, that evidence clearly reveals that the relationship, financial or otherwise, between the claimant and the partnership comprized of Cary A. Everett and Russell M. Everett underwent no discernible change during the period December 31, 1955, to January 1, 1958, and certainly this state of affairs could not exist had an actual functioning partnership agreement existed between the interested parties for the intervening period of two years." (Emphasis added.)

of those seeking its benefits and that doubts in construing such remedial legislation should be resolved in favor of coverage rather than exemption. Ewing v. McLean, 189 F.2d 887 (9th Cir., 1951); Willard v. Hobby, 134 F.Supp. 66 (D.C. E.D.Pa.1955); Pruitt v. Flemming, supra.

■ The sole question then for this Court to determine is whether in the light of the matters of record the Secretary drew reasonable inferences from the facts which he found, which facts are binding upon this Court.

42 U.S.C.A. § 411(d) provides:

"The term 'partnership' and the term 'partner' shall have the same meaning as when used in supplement F [subchapter K] of chapter 1 of Title 26."

Title 26 U.S.C. § 701 et seq.; Section 761 provides:

Subsection (a) "Partnership. * * * the term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate."

Subsection (b) "Partner.—For purposes of this subtitle, the term 'partner' means a member of a partnership."

Subsection (c) "Partnership agreement.—For purposes of this subchapter, a partnership agreement includes any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other manner as may be provided by the partnership agreement."

Subsection (d) "Liquidation of a partner's interest.—For purposes of this subchapter, the term 'liquidation of a partner's interest' means the termination of a partner's entire interest in a partnership by means of a distribution, or a series of distributions, to the partner by the partnership."

Section 704:

Subsection (e) "Family partnerships.—

"(1) Recognition of interest created by purchase or gift.—A person shall be recognized as a partner for purposes of this subtitle if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person."

■ While often the question of whether a partnership exists between particular persons is said to be a mixed question of law and fact, this is usually true when the relationship is founded upon an oral contract or upon the acts and conduct of the alleged partners. If there is no dispute as regards the facts, the question is one of law for the Court to determine. 40 Am.Jur., Partnerships, Section 87.

Since much of the basis for denying the claim was based upon speculation as to the motives of the plaintiff and his sons in forming, operating and liquidating the partnership rather than determining whether a partnership existed on the basis of the intent of the parties, this Court must distinguish the facts bearing on the intent of the parties from those statements which the Court regards as speculative. The law makes a distinction between intent and motive and while motive may show some evidence of intent, the law does not permit one to speculate as to motive and find as a fact that the requisite intent was not present.

There may be many reasons why people enter into partnerships. It may be for profit, for the purpose of taking a loss, for income tax reasons, to aid one partner in the performance of services

or for the purposes of securing capital. To deny that a partnership exists because no satisfactory reason can be given for its formation does not appear to the Court to constitute a legal basis for denying its existence or validity.

The same holds true with respect to the reason for its dissolution. Plaintiff, over 65 years of age, stated, among other things, that he wanted to retire. This seems to the Court to constitute a sufficient basis for dissolution of the partnership. While the Court does not find the motive for termination particularly relevant to the question of the existence of the partnership, it is not the law that one have a satisfactory reason for dissolving a partnership in order to determine whether a bona fide partnership in fact existed.

It was determined that the plaintiff could not satisfactorily distinguish between the activities and services which he rendered gratuitously prior to the formation of the partnership in 1956 and the services which he rendered for the partnership during the years 1956 and 1957 or from those services which he rendered after the dissolution of the partnership. The Court finds that the difference between these services is of no consequence. If the plaintiff rendered service to the partnership, it would be unnecessary for there to be a distinction between the services performed from one period to another. It would be entirely consistent with the plaintiff's declarations that he was a partner in the Everett Brothers Company if he performed the identical services that heretofore he had performed gratuitously. The evidence is uncontroverted that he performed services on behalf of the partnership.

The record shows that from the time the sons went into business in 1947 plaintiff helped them in giving them advice on how the business should be operated.[3]

The hearing examiner asked only general questions as to plaintiff's performance of services and answers to those questions given by Cary Everett showed that the plaintiff did in fact perform services for the company, although the exact nature of the services do not appear of record. The record shows that the plaintiff advised and counseled his sons in the operation of the business prior to the partnership formation and during the operation of the partnership. The failure of the record to show the actual advice and counsel and actual services performed relative to the specific subject matter was not plaintiff's failure to submit such evidence, but rather the fault of the hearing examiner himself.

The hearing examiner was preoccupied with determining the difference in the services as the Court found above to be irrelevant rather than the actual nature of the services performed. The failure

---

3. The following are excerpts from the transcript. The hearing examiner questioned Cary Everett with respect to the type of services performed by the plaintiff (T-79):

"Q. He furnished you a considerable amount of advice in the lumber business, I imagine, around Chipley as is highly competitive as it is in other places? (sic) A. Yes, sir.

"Q. And that condition continued up until 1956? Now, after the forming of the partnership in 1956, what was the actual physical every day, day to day, change in your father's relationship to the operation of the partnership? A. The physical?

"Q. Yes, his actual physical activities in connection with the personal contact, physical contact, with the operation of the partnership in '56 as compared to '55. A.

Well, he helped us there at the mill; he did, I would just say, general work. He would help us there in the office and he did just like I did, most anything the company had.

"Q. Did he do any more of that in '56 than he did in '55? A. Yes, sir.

"Q. What was the difference in the duties he performed in '56 and those performed in '55, Mr. Everett? A. Well, he was a member of the company in '56. Now, in '55, or before that time and even today, he is not obligated to help us in any way out there at the mill, but if we should need him, well, he is always glad to.

(T-85):

"Q. And do you think in 1956 and 1957 your father would spend considerable time on the yard, helping in that operation? A. Yes, sir."

of the record to reflect the actual services performed or advice given does not require further testimony to be taken, however.

The hearing examiner appeared to be puzzled over the failure of the plaintiff to take his salary and his 20% distributive share in cash. He appeared to be concerned with determining what money the plaintiff had to live on rather than the earnings which plaintiff undisputedly had credited to his capital account, reported as income and upon which he paid Federal income taxes.

The Secretary determined that plaintiff did not own any capital in the partnership and did not consider the transfer on the books of $18,611.44 from a payable account to the capital account a bona fide transaction, nor did the Secretary consider the transfers of $4,200, plaintiff's salary for services performed, or the 20% distributive share allocated to plaintiff to be capital contributions by virtue of their transfer to plaintiff's capital account. The records of the company are binding upon the plaintiff as well as the other members of the partnership. Plaintiff's interest in the partnership as evidenced by such transfer to the capital account, irrespective of plaintiff's personal wishes in the matter, would be attachable by creditors, if there were any, and creditors could have recovered that amount in addition to making plaintiff personally liable for any debts of the partnership. For the period of time that the capital account of plaintiff remained on the books plaintiff would have been unable to assert that this amount constituted a loan and in the event of bankruptcy, any preference that he would have had as a creditor would have been lost as a result of the entries in the books. Contrary to the conclusion of the Secretary, the entire capital structure of the partnership was altered by the elimination of $18,611.44 from its liability. A similar transaction was approved in Forman v. Commissioner of Internal Revenue, 199 F.2d 881 (9th Cir.1952).

See also Turner v. Flemming, 190 F. Supp. 147 (E.D.Ark.1960).

Disregarding for the moment the transfer of the loan account to the capital account, if plaintiff did not own any capital interest in the partnership and if there were no services performed by plaintiff, of what did the amounts which plaintiff received which were transferred to the capital account consist? Assuming that the $4,200 received each year for services performed did not constitute a salary, by leaving these distributed funds with the partnership and increasing the capital of the partnership to that extent, is this not a capital contribution in itself by which plaintiff could be considered, under the Internal Revenue Code, to be a partner?

Here the plaintiff claims that part of the increase in his capital account was attributable to salary and a part attributable to the income from his 20% distributive share. If the Court accepts the finding of the Secretary that plaintiff performed no services and contributed nor owned any capital and there is no evidence in the record to show that these amounts were gifts or loans, what are these increases if not an investment of plaintiff's earned wages and his distributive share back into the capital of the partnership?

The United States Supreme Court in Meehan v. Valentine, 145 U.S. 611, 12 S.Ct. 972, 36 L.Ed. 835 (1892), held that the participation in profits is prima facie evidence of a partnership under general law, as well as under the Uniform Partnership Act, and in absence of contradictory evidence will control. While the Court is aware that it is bound by the construction of 26 U.S.C. § 761 in determining whether a partnership exists, that statute necessarily includes the determination of whether there is the requisite intent to become a partner.

 The Secretary did not consider the determination of the Internal Rev-

enue Agent[4] that for income tax purposes plaintiff was considered a partner, and did in fact pay income taxes on his proportionate share of the salary and earnings. While this determination by the Internal Revenue Service would not be binding on the Secretary, it should have been given great weight in view of the fact that a partnership is determined under the Social Security Act on the basis of the statutory definition under the Internal Revenue Code. See 42 U.S.C.A. § 411(d) and 26 U.S.C. § 761 et seq. In 20 C.F.R. 404.1051f, it is provided that: "for the purpose of determining net earnings from self-employment, a partnership is one which is recognized as such for income tax purposes. * * * "

■ The Court accepts the *legal* criteria which the Appeals Council sets forth in its opinion on page 7 of the transcript. In determining whether a partnership exists the agreement, the intent and conduct of the parties must be considered. Indications of intent for agreement to form a partnership are contributions of capital *or* services by each party,

a share of the profits and losses, the right of each party to share the management of the business, the right of each party to act on behalf of the other party, and joint liability for the debts of the partnership. It is not necessary that all of these indications must exist or even that the term "partnership" or "partner" be used by the parties in their business dealings so long as the acts and conduct of the parties indicate an intent to carry on as co-owners a business for profit.

■ The Court finds that the factual criteria used by the Secretary to implement the foregoing legal criteria was based on an erroneous concept of the law.[5] The Court finds from the testimony of the certified public accountant that he advised the plaintiff and his sons to form a partnership; that the accountant on instructions from the partners changed the entire structure of the partnership through its book entries; actual counsel and advice and services were performed by plaintiff in the years 1956 and 1957; plaintiff's salary and 20% distributive share were credited to his capital account, thus increasing the operating

---

4. See transcript at page 168 through 170 where Internal Revenue Agent sets forth his reasons for his determination that plaintiff was a partner in the firm. The Secretary gave no weight whatsoever to this determination for the reason that the basis for the Internal Revenue Service determination of plaintiff's tax liability is not disclosed by the record. This Court finds that the Agent's report is clear and clearly sets forth the reasons for his determination that plaintiff was a partner.

5. As evidence of hearing examiner's erroneous concept of the law applicable, see his statements relative to partnership standards to be applied at Pages 101 and 102 of transcript.

The hearing examiner was asked by plaintiff's certified public accountant:

"A. Has the income tax examination been made a part of your record?

"Q. Yes, sir. It is and it will be considered, however, in that connection, bear in mind that the Internal Revenue Service operates under one Act of Congress and its definitions are entirely different from ours. In other words, it writes its

own laws as to what it will accept as a partnership. We do not. If it is a partnership under the laws of the State of Florida, it is a partnership for social security benefit purposes. Now that is not true with your income tax, like some alterations they will recognize and some they won't. But we don't. If it was corporation under the laws of the State of Florida, for my purposes in making my decision it is a corporation, I mean partnership. * * *

"A. Do you disagree with me, Mr. Taylor, that if the Treasury Department states that it is a partnership and if the Treasury Department assesses a self-employment tax on those partnership earnings, the law so assesses such tax, then on what basis could the Social Security Board make a determination that it was not a separate law?

"Q. Simply because the Act of Congress places upon the Secretary of the Department of Health, Education, and Welfare the responsibility for making determinations as to entitlement to benefits under the Act. * * *. Now, you have met the requirements of the income tax people for a partnership."

capital of the partnership as well as increasing his own capital account in excess of $10,000 for the years 1956 and 1957; plaintiff reported his earnings both as to salary and distributive share of his partnership earnings on the basis of his membership in the partnership; the Internal Revenue Service determined that for income tax purposes plaintiff was a partner. At the time of dissolution plaintiff was not immediately paid his entire capital interest, therefore the books reflected an indebtedness of this amount after dissolution. The Court considers this to be a proper accounting method, since, if the partnership were unable to pay a retiring partner immediately, such payment would constitute a debt of the partnership and was properly transferred from the capital account to a payable or loan account.

The foregoing evidence discloses an intent to form a partnership and had the Secretary applied the proper standards to his determination, he would have arrived at the same result.

With respect to the failure of plaintiff or the sons to advertise or make known to the public the fact that plaintiff became a member of the partnership is a factor in determining the bona fides of such partnership. Such failure is a factor which could be considered, but in the face of the foregoing the Court does not find it to be of great significance.

For the reasons as set forth above this Court finds that the Secretary erred in not finding that the plaintiff was a member of the Everett Brothers partnership in 1956 and 1957 and, therefore, the judgment of the Secretary must be reversed and judgment entered for the plaintiff, granting him coverage under the Social Security Act.[6]

Order accordingly.

6. See also the determination by the United States Supreme Court in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L. Ed. 670 (1946) and Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949). It is to be noted that there was no evidence in this case suggesting the formation of the partnership for avoidance of

income taxes and although the Secretary infers that the formation of the partnership here was influenced by the plaintiff's desire to secure Social Security benefits, the Secretary stated that there was no legal prohibition to such conduct. Accord: Rafal v. Flemming, 171 F.Supp. 490 (D.C.E.D.W.Va.1959).