KELLY, J.
(concurring). This case requires us to interpret the public accommodations provision of the Civil Rights Act (CRA), MCL 37.2302. A unanimous Court agrees that this provision prohibits unlawful discrimination against any individual, and not just members of the public. Having authored the opinion, obviously I agree with it. But I write separately because I believe that it is important to set forth additional reasons for the decision to which not all my colleagues adhere.
To start, I find frequent ambiguity in statutory language. I do not subscribe to the belief that “only a few [statutory] provisions are truly ambiguous.” Mayor of Lansing v Michigan Pub Service Comm, 470 Mich 154, 166; 680 NW2d 840 (2004). For various reasons, *41 not the least of which is the imprecise character of language, it is often impossible to discern legislative intent solely from the language written into statutes. As Justice Frankfurter eloquently stated:
Unlike mathematical symbols, the phrasing of a document, especially a complicated enactment, seldom attains more than approximate precision. If individual words are inexact symbols, with shifting variables, their configuration can hardly achieve invariant meaning or assured definiteness. Apart from the ambiguity inherent in its symbols, a statute suffers from dubieties. It is not an equation or a formula representing a clearly marked process, nor is it an expression of an individual thought to which is imparted the definiteness a single authorship can give. A statute is an instrument of government partaking of its practical purposes but also of its infirmities and limitations, of its awkward and groping efforts. [Frankfurter, Some reflections on the reading of statutes, 47 Colum L R 527, 528 (1947).]
Accordingly, rather than restraining myself to the text and “makfing] a fortress out of the dictionary,”[1]1 weigh on the balance any material that illuminates legislative intent. In this case, I have found numerous persuasive factors, not discussed in the majority opinion, that indicate that this Court has reached the correct interpretation of the statute.[2]
*42 A. REMEDIAL STATUTES
The canon of statutory construction that remedial statutes are to be liberally construed is deeply imbedded in American jurisprudence. Indeed, all 50 states[3] and *43 courts in each federal circuit[4] have endorsed it. Even
*44 the United States Supreme Court has adopted the canon and construed many federal laws using it.[5] This long-established canon still has a place in Michigan law. Though it cannot be relied on to reach a result that is inconsistent with statutory language, it is otherwise entitled to consideration. Plaintiff brought suit under the Michigan Civil Rights Act. As we have stated on prior occasions, the CRA is a broad, remedial statute. Eide v Kelsey- Hayes, 431 Mich 26, 36; 427 NW2d 488 (1988). When interpreting this statute and similar remedial statutes, it is important to remember the “well-established rule that remedial statutes are to be liberally construed to suppress the evil and advance the remedy.” Id. at 34 (citing 3 Sands, Sutherland Statutory Construction [4th ed], § 60.01, p 55).
*45 B. SUPPORT FOR OUR INTERPRETATION OUTSIDE OUR JURISDICTION
There is also support for our interpretation outside this jurisdiction. The language used in the CRA[6] is substantially similar to the language of title III of the Americans with Disabilities Act.[7] For this reason, the caselaw interpreting the Americans with Disabilities Act is instructive with regard to the correct interpretation of our statute.
In Menkowitz v Pottstown Mem Med Ctr,[8] the United States Court of Appeals for the Third Circuit decided a case involving almost identical facts. In that case, the defendant hospital suspended the staff privileges of the plaintiff, a disabled orthopedic surgeon. Id. at 115. The plaintiff sued, alleging that the hospital had discriminated against him on the basis of his disability. Id. at 116. The district court dismissed the claim, deciding that title III protects only those seeking medical care, not the employees and other staff who serve them. Id. *46 The Third Circuit reversed, holding that a “medical doctor with staff privileges ... may assert a cause of action under Title III of the ADA as an ‘individual’ who is denied the ‘full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.’ ” Id. at 122. This is the same conclusion we have reached in interpreting our statute. Because the Third Circuit was interpreting a similar statute under similar circumstances, the Menkowitz decision supports the conclusion that we reached the correct interpretation of our statute.
C. OUR INTERPRETATION IS CONSISTENT WITH MICHIGAN LAW
Our conclusion is also consistent with existing Michigan caselaw. The fact that, in considering a similar issue, another Michigan court reached an analogous result gives us confidence that our interpretation of the statute is correct.
In Neal v Dep’t of Corrections, the plaintiffs were women inmates in Michigan Department of Corrections facilities who claimed they were victims of sexual harassment. Initially, the Court of Appeals ruled that the prisoners were not protected by the CRA because the prison did not furnish a service to its prisoners. Neal v Dep’t of Corrections, 230 Mich App 202, 209; 583 NW2d 249 (1998) (Neal 7). However, on rehearing, the Court of Appeals ruled that the prisoners were protected because the CRA does not preclude its application on the basis of a person’s status as a prisoner or inmate. Neal v Dep’t of Corrections (On Rehearing), 232 Mich App 730, 740; 592 NW2d 370 (1998) (Neal II). A special panel of the Court of Appeals affirmed the decision in Neal II in its opinion in Doe v Dep’t of Corrections, 240 Mich App 199; 611 NW2d 1 (2000). The special panel conceded that it *47 was possible that the Legislature did not intend the CRA to apply to prisoners. But, it stated, it did not have the liberty to change the meaning of statutory language. Id. at 201.
Neal arose in a different context. However, the argument advanced by the defendants in that case is the same one advanced by defendants here, that there is an inferred exclusion from the protection of the CRA. Neal I, 230 Mich App at 206. In Neal, the defendants claimed that penal institutions should be divided into a public side, where discrimination is prohibited, and a nonpublic side, where inmates are not protected. Id. In this case, according to defendants, discrimination is not allowed when hospitals are providing services to the public. But, they reason, as regards relationships with the hospitals’ physicians, the CRA does not prohibit discrimination. We reject this argument here just as the Court of Appeals did in Neal. The statute simply does not preclude its application on the basis of a person’s status.
D. LEGISLATIVE ACQUIESCENCE
Aside from the similarity of the arguments advanced, the Court of Appeals decision in Doe is persuasive for another reason. After the special panel’s decision, the Legislature amended the CRA specifically to exclude prisoners. When it did so, it had the opportunity to carve out a broader exclusion. However, it did not remove prisons as places of public service, nor did it engage in the artifice of dividing the institution into public and nonpublic areas. The Legislature simply removed prisoners from the protection of the act. It has made no further exclusion of persons or classes of persons from the CRA, nor has it given any indication of an intent to further restrict this remedial statute. Its *48 decision not to insert further exclusionary language is evidence that the Legislature approved the Court’s broad interpretation of this statute. See, e.g., Twork v Munising Paper Co, 275 Mich 174, 178; 266 NW 311 (1936); Gordon Sel-Way, Inc v Spence Bros Inc, 438 Mich 488, 505; 475 NW2d 704 (1991).
CONCLUSION
The language of the CRA clearly supports the decision in this case. I write separately to stress that the language is not the only consideration that courts should weigh in interpreting a statute. “[T]he purpose of construction is the ascertainment of meaning; nothing that is logically relevant should be excluded.” Stephen Breyer, Active Liberty (New York: Knopf, 2005), p 18, quoting Learned Hand, The Spirit of Liberty (New York: Knopf, 1960), p 109. Interpreting a statute involves a search for intent, and courts should be free to use all available interpretative tools in undertaking it. Here, each of the factors I have discussed is relevant to that search.
CAVANAGH, J., concurred with KELLY, J.

 Cabell v Markham, 148 F2d 737, 739 (CA 2, 1945) (opinion by Hand, J.)

 Justice Makkman writes a concurring opinion criticizing my approach to statutory analysis, suggesting it lacks discipline. The aids to statutory construction I use in my concurring opinion are among many that have been applied by the Michigan Supreme Court since long before either Justice Makkman or I was born. Almost every justice who has ever sat in this Court would be shocked to hear the statutory analysis I use depreciated as “language-avoidance ‘interpretative’ techniques.” I agree with Justice Makkman that aids to statutory analysis should not be misused and, I might add, that includes the “textualist” approach to which he so avidly subscribes.

 See, e.g., Alabama: Austin v Alabama Check Cashers Ass’n, 936 So 2d 1014, 1026 (Ala, 2005). Alaska: DH Blattner & Sons v NM Rothschild & Sons, Ltd, 55 P3d 37, 47 (Alas, 2002). Arizona: Special Fund Div v Industrial Comm, 191 Ariz 149, 152; 953 P2d 541 (1998). Arkansas: Chicago Mill & Lumber Co v Smith, 228 Ark 876; 310 SW2d 803 (1958). California: Betancourt v Storke Housing Investors, 31 Cal 4th 1157; 82 P3d 286 (2003). Colorado: Christy v Ibarra, 826 P2d 361 (Colo App, 1991). Connecticut: Pereira v State, 228 Conn 535, 542; 637 A2d 392 (1994). Delaware: Vance v Irwin, 619 A2d 1163, 1164-1165 (Del, 1993). Florida: Joshua v City of Gainesville, 768 So 2d 432, 435 (Fla, 2000). Georgia: Mitchell v Wilkerson, 258 Ga 608, 610; 372 SE2d 432 (1988). Hawaii: Kalima v State, 111 Hawaii 84, 99; 137 P3d 990 (2006). Idaho: Page v McCain Foods, Inc, 141 Idaho 342, 346; 109 P3d 1084 (2005). Illinois: Grant Contracting Co v Murphy, 387 Ill 137, 143; 56 NE2d 313 (1944). Indiana: United Nat’l Ins Co v DePrizio, 705 NE2d 455, 459-460 (Ind, 1999). Iowa: TLC Home Health Care, LLC v Iowa Dep’t of Human Services, 638 NW2d 708, 714 (Iowa, 2002). Kansas: O’Donoghue v Farm Bureau Mut Ins Co, Inc, 275 Kan 430, 437; 66 P3d 822 (2003). Kentucky: City of Louisville v Slack, 39 SW3d 809, 815 (Ky, 2001). Louisiana: Jim Walter Homes, Inc v Guilbeau, 934 So 2d 239, 245 (La App, 2006). Maine: Bennett v Prawer, 2001 Me 172; 786 A2d 605 (2001). Maryland: Caffrey v Dep’t of Liquor Control, 370 Md 272, 306; 805 A2d 268 (2002). Massachusetts: Gasior v Massachusetts Gen Hosp, 446 Mass 645, 654; 846 NE2d 1133 (2006). Michigan: Eide v Kelsey-Hayes Co, 431 Mich 26, 36; 427 NW2d 488 (1988). Minnesota: Foley v Whelan, 219 Minn 209,213; 17 NW2d 367 (1945). Mississippi: Cahoon v Scarborough, 159 Miss 5, 10; 131 So 431 (1930). Missouri: Scheble v Missouri Clean Water Comm, 734 SW2d 541, 556 (Mo App, 1987). Montana: In re CH, 318 Mont 208, 214; 79 P3d 822 (2003). Nebraska: State v Kastle, 120 Neb 758, 772; 235 NW 458 (1931). Nevada: Virden v Smith, 46 Nev 208, 211; 210 P 129 (1922). New Hampshire: Newell v Moreau, 94 NH 439, 442; 55 A2d 476 (1947). New Jersey: Feldman v Hunterdon Radiological Assoc, 187 NJ 228, 239; 901 A2d 322 (2006). New Mexico: Mem Med Ctr v Tatsch Constr, Inc, 129 NM 677, 685; 12 P3d 431 (2000). New York: Rizzo v New York State Div of Housing & Community Renewal, 6 NY3d 104, 114; 843 NE2d 739 (2005). North Carolina: Nationwide Mut Ins Co v Lankford, 118 NC App 368, 376; 455 SE2d 484 (1995). North Dakota: Schaefer v Job Service North Dakota, 463 NW2d 665, 666 (ND, 1990). Ohio: Clark v Scarpelli, 91 *43 Ohio St 3d 271, 275; 744 NE2d 719 (2001). Oklahoma: Associated Indemnity Corp v Cannon, 1975 Okla 87; 536 P2d 920 (1975). Oregon: Rash v Employment Div, 85 Or App 570, 573; 737 P2d 966 (1987). Pennsylvania: School Dist v Montgomery, 227 Pa 370; 76 A 75 (1910). Rhode Island: Weybosset Hill Investments, LLC v Rossi, 857 A2d 231, 239 (RI, 2004). South Carolina: Elliott v South Carolina Dep’t of Transportation, 362 SC 234, 237; 607 SE2d 90 (SC App, 2004). South Dakota: Chiolis v Lage Dev Co, 512 NW2d 158, 163 (SD, 1994). Tennessee: Kannon v Pillow, 26 Tenn 281 (1846). Texas: Mecca Fire Ins Co v Stricker, 136 SW 599, 601 (Tex Civ App, 1911). Utah: Tolle v Fenley, 2006 Utah App 78; 132 P3d 63 (2006). Vermont: Celeste Washington Supreme Court v Pierce, 179 Vt 318; 895 A2d 173 (2005). Virginia: Brooks v Hannan, 53 Va Cir 465, 466 (2000). Washington: State ex rel Winston v Seattle Gas & Electric Co, 28 Wash 488, 493; 68 P 946 (1902). West Virginia: Plummer v Workers’ Compensation Div, 209 W Va 710, 713; 551 SE2d 46 (2001). Wisconsin: Dep’t of Transportation v Transportation Comm, 111 Wis 2d 80, 92; 330 NW2d 159 (1983). Wyoming: Wyoming Ins Guaranty Ass’n v Woods, 888 P2d 192, 195 (Wy, 1994).

 See, e.g., First Circuit: Carew v Boston Elastic Fabric Co, 5 F Cas 56 (D Mass, 1871); United States, to Use and Benefit of Sargent Co v Century Indemnity Co, 9 F Supp 809 (D Me, 1935); Stevens v Bangor & Aroostook R Co, 97 F3d 595 (CA 1, 1996). Second Circuit: Imlay v Norwich & W R Co, 13 F Cas 1 (D Conn, 1858); Bossert Electric Constr Co v Pratt Chuck Co, 179 F 385 (CA 2, 1910); Pittston Stevedoring Corp v Dellaventura, 544 F2d 35 (CA 2, 1976); Rogers v Consolidated Rail Corp, 948 F2d 858 (CA 2, 1991); Travelers Ins Co v Carpenter, 411 F3d 323 (CA 2, 2005). Third Circuit: Sirkin v Phillips Colleges, Inc, 779 F Supp 751 (D NJ, 1991); Clarke v Unum Life Ins Co of America, 14 F Supp 2d 1351 (SD Ga, 1998). Fourth Circuit: Dorsey v Bowen, 828 F2d 246 (CA 4, 1987); Bass v City of Wilson, 835 F Supp 255 (ED NC, 1993). Fifth Circuit: Everett v Ribicoff, 200 F Supp 103 (ND Fla, 1961); Harris v Wal-Mart Stores, Inc, 205 F3d 847 (CA 5, 2000); Sixth Circuit: Jeter v Finch, 310 F Supp 1371 (ED Ky, 1970); Marshall v Davis, 517 F Supp 551 (WD Mich, 1981). Seventh Circuit: Smith v Packard, 98 F 793 (CA 7, 1900); Schweizer v Mager, 297 F 334 (ND Ill, 1924); Johnson v Runyon, 47 F3d 911 (CA 7, 1995); Eighth Circuit: Surrisi v Conwed Corp, 510 F2d 1088 (CA 7, 1975); Maune v IBEW, Local #1, Health & Welfare Fund, 83 F3d 959 (CA 8, 1996). Ninth Circuit: Mahroom v Hook, 563 F2d 1369 (CA 9, 1977); Smith v CMTAIAM Pension Trust, 746 F2d 587 (CA 9, 1984); Carson Harbor Village, Ltd v Unocal Corp, 270 F3d 863 (CA 9, 2001). Tenth Circuit: In re Dederick Herzig, 91 F2d 646 (CA 10, 1937); Sierra Club v Seaboard Farms Inc, 387 F3d 1167 (CA 10, 2004). Eleventh Circuit: Hellums v *44 Webster Industries, 97 F Supp 2d 1287 (MD Ala, 2000); Cusumano v Maquipan Int’l, Inc, 2005 US Dist LEXIS 30257 (MD Fla, 2005). D.C. Circuit: Bethel v Jefferson, 589 F2d 631 (1978); Thomas v Mineta, 310 F Supp 2d 198 (D DC, 2004).

 The United States Supreme Court has used this canon in interpreting: the Securities and Exchange Act, 15 USC 78a et seq., Tcherepnin v Knight, 389 US 332, 336; 88 S Ct 548; 19 L Ed 2d 564 (1967); patent laws, Winans v Denmead, 56 US 330, 341; 14 L Ed 717 (1854); the federal Motor Carrier Act, 49 USC 306, McDonald v Thompson, 305 US 263, 266; 59 S Ct 176; 83 L Ed 164 (1938); revenue statutes, United States v Hodson, 77 US 395, 406; 19 L Ed 937 (1870); the Longshoremens and Harbors Act, 39 USC 900 et seq., Baltimore & Philadelphia Steamboat Co v Norton, 284 US 408, 414; 52 S Ct 187; 76 L Ed 366 (1932); the Fair Labor Standards Act, 42 USC 12101 et seq., Mitchell v Lublin, McGaughy & Assoc, 358 US 207, 211; 79 S Ct 260; 3 L Ed 2d 243 (1959); the Civil Rights Act, 42 USC 1983, Gomez v Toledo, 446 US 635, 639; 100 S Ct 1920; 64 L Ed 2d 572 (1980); the Americans with Disabilities Act, 42 USC 12101 et seq., PGA Tour, Inc v Martin, 532 US 661, 676; 121 S Ct 1879; 149 L Ed 2d 904 (2003); antitrust laws, Jefferson Co Pharmaceutical Ass’n, Inc v Abbott Laboratories, 460 US 150, 159; 103 S Ct 1011; 74 L Ed 2d 882 (1983); and the federal Employers’ Liability Act, 45 USC 51 et seq., Atchison T & S F R Co v Buell, 480 US 557, 562; 107 S Ct 1410; 94 L Ed 2d 563 (1987).

 MCL 37.2302 provides in part:
Except where permitted by law, a person shall not:
(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status. [Emphasis added.]

 42 USC 12182 (title III) provides:
(a) General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

 154 F3d 113 (CA 3, 1998).