*In re* WIRSING

Docket No. 104834. Argued October 7, 1997 (Calendar No. 15). Decided
February 3, 1998.

Donna L. Wirsing, plenary guardian of Lora Faye Wirsing, a develop-
mentally disabled person, petitioned the Genesee County Probate
Court for authorization to have a tubal ligation performed on her
ward for birth control purposes. The court, Thomas L. Gadola, J.,
denied having jurisdiction, as did the Genesee Circuit Court, Earl
E. Borradaile, J. The Court of Appeals, CYNAR, P.J., and BURNS and
M. E. KOBZA, JJ., in an unpublished opinion per curiam, held that
jurisdiction properly lay in the probate court (Docket No. 91091).
The Michigan Protection and Advocacy Service (MPAS) was allowed
to intervene. Following denial of an MPAS motion to dismiss the
petition, the Court of Appeals, M. J. KELLY, P.J., and CYNAR and
DOCTOROFF, JJ., denied leave to appeal (Docket No. 100441), as did
the Supreme Court, 429 Mich 895 (1988). Thereafter, the probate
court authorized the guardian to consent to the procedure. MPAS
appealed in the Genesee Circuit Court, which affirmed. The Court
of Appeals, FITZGERALD, P.J., and MARILYN KELLY and JANSEN, JJ.,
denied leave to appeal (Docket No. 144319). Thereafter, the
Supreme Court, in lieu of granting leave to appeal, directed the
Court of Appeals to determine, as on leave granted, without restric-
tion, whether probate judges possess the power to authorize a
guardian to consent to the sterilization of a developmentally dis-
abled citizen. 441 Mich 886 (1992). On remand, the Court of
Appeals, GRIBBS, P.J., and P. S. TERANES, J. (D. E. HOLBROOK, JR., J.,
dissenting), reversed, reasoning that the 1974 revision of the Mental
Health Code eliminated the authority of the probate court to
authorize a guardian to consent to sterilization of a ward (Docket
No. 159638). The guardian appeals.

In a unanimous opinion by Justice CAVANAGH, the Supreme Court
*held*:

The probate court has jurisdiction to hear an application by the
guardian of a developmentally disabled person for authorization to
consent to an extraordinary procedure under MCL 330.1629; MSA
14.800(629), including sterilization, and to order such authorization
if it determines the procedure is in the ward's best interests.

1. Probate courts are courts of limited jurisdiction, which is defined entirely by statute. The Mental Health Code plainly contemplates the probate court's authorization of a guardian to consent to extraordinary medical procedures, specifically including sterilization. In cases in which a person has never been able to make a decision in the context of an important right, an objective best-interests standard is appropriate.

2. In this case, the ward is unable to choose for herself whether to become pregnant. To deprive her of the option of sterilization comports neither with the statute nor her best interests. The probate court appropriately evaluated the evidence to insure that the decision made was in the ward's best interests.

Reversed.

214 Mich App 131; 542 NW2d 594 (1995) reversed.

COURTS — PROBATE COURTS — DEVELOPMENTALLY DISABLED PERSONS — STERILIZATION.

The probate court has jurisdiction to hear an application by the guardian of a developmentally disabled person for authorization to consent to an extraordinary procedure, including sterilization, and to order such authorization if it determines the procedure is in the ward's best interests (MCL 330.1629; MSA 14.800[629]).

*Herbert J. Booth* and *John P. Siler* for the appellant.

*Calvin A. Luker, Stewart R. Hakola, Marsha Lynn Tuck* and *Mark A. Cody* for intervenor-appellee.

Amici Curiae:

*Mark Todd Twichel* for American Association of Mental Retardation, Arc of Michigan, Association for Community Advocacy, and Autism Society of Michigan.

CAVANAGH, J. In this case we are asked to determine if a probate court has the statutory authority to permit the plenary guardian of a ward to consent to a tubal ligation of the ward for birth control purposes. For the reasons indicated below, we conclude that the probate court does have such authority. We fur-

ther conclude that the authority was properly exercised in this case, and therefore affirm the order of the Genesee County Probate Court.

The underlying facts in this case are straightforward, despite the lengthy course of litigation. In 1981, eighteen-year-old Lora Faye Wirsing was adjudicated to be a developmentally disabled person as a result of retardation since her birth. The Genesee County Probate Court appointed petitioner-appellant Donna L. Wirsing as plenary guardian of her daughter, Lora Faye Wirsing, under the Mental Health Code, MCL 330.1600 *et seq.*; MSA 14.800(600) *et seq.* In 1986, the guardian petitioned the Genesee County Probate Court for authorization for a tubal ligation for birth control purposes. Both the Genesee Probate and Circuit Courts denied having jurisdiction. The first decision of the Court of Appeals in this matter held that jurisdiction properly lay in the probate court.

The case was returned to the probate court, where the Michigan Protection and Advocacy Service (MPAS) was allowed to intervene. Following denial of an MPAS motion to dismiss the petition, with leave for an interlocutory appeal being denied by the Court of Appeals and this Court, the case proceeded to an extensive evidentiary hearing. The guardian and MPAS presented numerous lay and expert witnesses.

The trial judge made nineteen specific findings of fact, as follows:

> 1. That Lora Faye Wirsing is a developmentally disabled person born December 2, 1962, with an Intelligence Quotient in the upper 20s or lower 30s based on several reputable tests.

2. Donna Wirsing, the mother of Lora Faye Wirsing, is her guardian pursuant to appointment by the Genesee County Probate Court, and has petitioned the Court for authority to consent to the performing of sterilization procedure on Lora Faye Wirsing.

3. That Richard C. Wirsing, the father and other presumptive heir of Lora Faye Wirsing joins the mother/guardian in this request.

4. That the purpose of the sterilization procedure would be to protect the ward from becoming pregnant and from giving birth to a child she would be totally incapable of caring for.

5. That the ward does not ovulate on a regular basis, but could begin ovulating at any time making her physically subject to pregnancy.

6. That the ward is apparently not sexually active, and the parents by keeping a close watch on their daughter have to the best of their ability protected and shielded her from situations that could lead to sexual activity.

7. That the parents are loving and devoted parents who have the best interests of their daughter at heart, and have given her every opportunity and encouragement to develop within her limitations, and the daughter has achieved to the utmost of her ability.

8. That Lora Faye Wirsing has no ability to understand the relationship between sexual intercourse and pregnancy.

9. That Lora Faye Wirsing has no understanding of the birth process.

10. That Lora Faye Wirsing has no ability to make an informed consent to intercourse.

11. That Lora Faye Wirsing has no ability to care for a child.

12. That other non-surgical means of pregnancy prevention are not suitable because of Lora Faye Wirsing's inability to understand the use of contraceptives and the possible significant negative medical effects of long term use of birth control pills.

13. That developmentally disabled individuals are frequently the victims of sexual abuse.

14. That a tubal ligation is the safest and least intrusive means of surgical sterilization of a female, and subjects the patient to no undue risk.

15. That a pregnancy and birth may carry a greater risk physically and psychologically to Lora Faye Wirsing than a tubal ligation.

16. That a tubal ligation for the sole purpose of sterilization is available to a competent female upon request.

17. That the ward, based on the Court's finding, [sic] in appointing plenary guardian cannot consent to the procedure herself.

18. That no physician will perform and no hospital will allow a sterilization procedure to be performed on a developmentally disabled person without Court Order authorizing the guardian to consent.

19. That there is no Michigan statute concerning sterilization of developmentally disabled persons.

On the basis of these factual findings, the probate court authorized the guardian to consent to the procedure for the ward. MPAS appealed in the Genesee Circuit Court, which affirmed. The Court of Appeals denied leave to MPAS, which then applied for leave to appeal to this Court. This Court, in lieu of granting leave, directed the Court of Appeals to determine, as on leave granted, without restriction, "whether probate judges possess the power to authorize a guardian to consent to the sterilization of a developmentally disabled citizen." 441 Mich 886 (1992).

On remand, the Court of Appeals reversed the decision of the probate court. 214 Mich App 131; 542 NW2d 594 (1995). The Court of Appeals reasoned that the 1974 revision of the Mental Health Code, MCL 330.1600 *et seq.*; MSA 14.800(600) *et seq.*, eliminated the authority of the probate court to authorize a guardian to consent to the sterilization of a ward.

We granted the guardian leave to appeal, and now reverse.

Probate courts are courts of limited jurisdiction. Const 1963, art 6, § 15. The jurisdiction of the probate court is defined entirely by statute. *In re Kasuba Estate*, 401 Mich 560; 258 NW2d 731 (1977).

The history of sterilization of mentally ill and developmentally disabled persons in Michigan began in 1897, when a bill was introduced in our Legislature to utilize sterilization to prevent "idiocy."[1] As may be gathered from the terminology employed, the reasoning underlying this proposed legislation was of a sort no longer condoned by a large portion of society. While this bill failed, a similar act, 1913 PA 34, later became law, applying to those persons who were "mentally defective" and supported at public expense in public institutions. We found that statute constitutionally deficient on equal protection grounds in *Haynes* v *Lapeer Circuit Judge*, 201 Mich 138; 166 NW 938 (1918).

A subsequent act, 1923 PA 285, was upheld by this Court in *Smith* v *Wayne Co Probate Judge*, 231 Mich 409; 204 NW 140 (1925). That act applied to mentally defective persons. It was replaced by 1929 PA 281, allowing sterilization of insane and mentally ill persons to prevent them from procreating.

While these later acts authorized the application by a parent for sterilization of a child, as was the case in *Smith*, the bulk of applications, as the parties here agree, came from the administrators of various institutions for the sterilization of the wards under their care.

---

[1] See Brakel, The Mentally Disabled and the Law (3d ed), p 522.

In 1974, our Legislature undertook a complete revision of the statutes dealing with mentally ill and developmentally disabled persons. The resulting Mental Health Code, MCL 330.1600 *et seq.*; MSA 14.800(600) *et seq.*, repealed 1929 PA 281. This new Mental Health Code did not mention sterilization or, for that matter, any medical procedures. Presumably, § 602's reference to utilizing a guardianship "to promote and protect the well-being of the individual" contemplated the provision of necessary medical assistance.

In 1977, the Legislature passed MCL 330.1629; MSA 14.800(629), which concerned a guardian's consent to ordinary medical procedures on behalf of a ward. The 1978 amendment of this section added a reference to "extraordinary procedures," specifically including sterilization. MCL 330.1629; MSA 14.800(629) currently reads as follows:

> (1) A guardian, temporary guardian, plenary, partial, or standby guardian shall not be liable for civil damages by reason of authorizing routine or emergency medical treatment or surgery or extraordinary procedures when previously ordered by the court for his or her ward if the guardian acted after medical consultation with the ward's physician, acted in good faith, was not negligent, and acted within the limits established for the guardian by the court.

> (2) A guardian, temporary guardian, plenary, partial, or standby guardian who has been authorized by the court to give medical consent, shall not be liable by reason of his or her authorization for injury to the ward resulting from the negligence or other acts of a third person.

> (3) Routine medical services do not include extraordinary procedures. Extraordinary procedures includes, but is not limited to, sterilization, including vasectomy, abortion, organ transplants from the ward to another person, and experimental treatment.

This case involves a petition by a plenary guardian. The duties of a plenary guardian are defined by MCL 330.1631; MSA 14.800(631). Subsection 1 of that section defines the relevant duties in this matter:

> To the extent ordered by the court, the plenary guardian of the person shall have and a partial guardian of the person may have among others the following duties:
>
> (a) Custody of the ward.
>
> (b) The duty to make provision from the ward's estate or other sources, for the ward's care, comfort, and maintenance.
>
> (c) The duty to make a reasonable effort to secure for the ward training, education, medical and psychological services, and social and vocational opportunity as are appropriate and as will assist the ward in the development of maximum self-reliance and independence.

In view of the above, we are able to answer this question with the application of a rule so basic that it predates the history of the sterilization statutes. When interpreting statutes, "[t]he fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern." *People ex rel Twitchell v Blodgett*, 13 Mich 127, 167 (1865) (opinion of COOLEY, J., citations omitted). While not discounting the languishing of this matter in the courts for over eleven years, we find the statute to plainly contemplate the probate court's authorization of a guardian to consent to extraordinary medical procedures, specifically including sterilization.

The Court of Appeals majority failed, as noted by the dissent below, to distinguish between the unfortunate history of forced eugenic sterilization and the separate concept of voluntary sterilization. Our decision here is based on the later concept. Nothing in

this decision should be interpreted as an endorsement of a return to the routine sterilization system of the past, as MPAS argues may occur. Indeed, our decision here is based on the Legislature's sound determination of the probate court's role, and we have every confidence that the probate courts of our state will diligently carry out that role, limiting extraordinary procedures to only those situations in which they are appropriate. Our Legislature halted the routine involuntary sterilizations of the past, but our approval of this effort must not cloud our recognition of the Legislature's authorization of the availability of sterilization as a voluntary extraordinary procedure.

We have previously recognized that, where an individual is unable to exercise an important right, a substituted-judgment analysis may be appropriate. *In re Martin*, 450 Mich 204; 538 NW2d 399 (1995). In *Martin*, we also noted that in those cases, such as this, in which a person has never been able to make a decision in the context of an important right, an objective best-interests standard might be appropriate. *Id.* at 223, n 15.

In this case, the ward is unable to choose for herself whether she wishes to become pregnant. To deprive her of the option of sterilization, in addition to affronting the statute, would make the choice for her, and make the same choice for each ward, regardless of the circumstances. This result comports neither with the statute nor the best interests of the individual ward.

What the Legislature has instead provided is a mechanism designed to encourage a guardian, upon concluding it is in the ward's interests, to apply to the probate court for an order authorizing consent for an

extraordinary procedure such as sterilization. The probate court shall then evaluate the case, and, if it is persuaded and finds that the procedure is in the ward's best interests, order the authorization of consent.

We find that to be exactly what happened here. The guardian articulated reasons for believing this procedure was in the ward's best interests, and supported those reasons with evidence. The probate court concluded that such a procedure indeed was in the ward's best interests and authorized it. In these matters, where the ward cannot exercise personal judgment, the decision passes to the guardian. In this case, the probate court appropriately evaluated the evidence to insure that the decision made was indeed in the ward's best interests.

We specifically decline to hold that a "clear and convincing" evidence standard is required in these matters, entrusting the probate court to exercise its sound discretion in deciding whether an extraordinary procedure is in the ward's best interests. A review of the record leaves us convinced that the probate court carefully and thoughtfully carried out its role and made a well-reasoned decision.

Accordingly, we hold that the probate court has jurisdiction to hear an application by a guardian for authorization to consent to an extraordinary procedure under MCL 330.1629; MSA 14.800(629), including sterilization, and to order such authorization if it determines the procedure is in the ward's best interests. We reverse the decision of the Court of Appeals and reinstate the August 1, 1990, order of the Genesee County Probate Court allowing the guardian to

consent to the performance of a tubal ligation on her ward.

MALLETT, C.J., and BRICKLEY, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred with CAVANAGH, J.