DOE v DEPARTMENT OF CORRECTIONS

Docket No. 200810. Submitted October 29, 1999, at Lansing. Decided March 3, 2000, at 9:40 A.M. Leave to appeal sought.

Jane Doe and Joan Roe, on behalf of current or former state prison inmates, brought a class action in the Ingham Circuit Court against the Department of Corrections, alleging that a department policy directive that denies HIV-positive inmates placement in community residential programs, camps, and farms violates the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* The court, Peter D. Houk, J., granted summary disposition for the department, ruling the PWDCRA inapplicable to prisons and prisoners. The Court of Appeals, GRIFFIN, P.J., and MCDONALD, J. (WHITE, J., concurring), reversed, stating that it was constrained by MCR 7.215(H) to hold that a prison is a public service within the meaning of the PWDCRA for the same reasons that the majority in *Neal v Dep't of Corrections (On Rehearing)*, 232 Mich App 730 (1998), decided that a prison is a public service within the meaning of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* The Court of Appeals, following a poll of its judges, issued an order vacating the Court of Appeals opinion in this case and convening a special panel to resolve the conflict that would have been created between the panels in *Neal (On Rehearing)* and *Doe* but for the provisions of MCR 7.215(H). 236 Mich App 801 (1999).

After consideration by the conflict resolution panel, the Court of Appeals *held*:

The reasoning found in the majority opinion in *Neal (On Rehearing)* and the concurrence in *Doe* is persuasive and consistent with established rules of statutory construction. If it is the intent of the Legislature not to have the civil rights statutes apply to prisons and prisoners, it must draft and enact statutes that so provide.

Reversed and remanded for further proceedings.

GRIBBS, J., dissenting, stated that the reasoning in *Neal v Dep't of Corrections*, 230 Mich App 202 (1998), the dissenting opinion in *Neal (On Rehearing)*, *supra*, and the majority opinion in *Doe*, *supra*, that "public service," as used in the civil rights acts, means service to the public and that prisons, in their dealings with prison-

ers, do not provide a service to the public such that they should be subject to the civil rights acts is persuasive. The trial court's grant of summary disposition for the department in this case should be affirmed.

CIVIL RIGHTS — PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — PRISONS AND PRISONERS.

A prison is a "public service" within the meaning of that term as used in the Persons with Disabilities Civil Rights Act; accordingly, prisoners may bring an action to enforce the provisions of the act (MCL 37.1101 *et seq.*; MSA 3.550[101] *et seq.*).

*Deborah LaBelle* and *Jeffrey Dillman,* for the plaintiffs.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Leo H. Friedman* and *Mark W. Matus,* Assistant Attorneys General, for the defendant.

Amici Curiae:

*Gayle Rosen* and *Stewart Hakola,* for Michigan Protection and Advocacy Services, Inc.

*Michael Steinberg* and *Kary Moss,* for American Civil Liberties Union Fund of Michigan.

*Sandra Girard* and *Maia Justice Storm,* for Prison Legal Services of Michigan, Inc.

Before: HOEKSTRA, P.J., and KELLY, GRIBBS, DOCTOROFF, MURPHY, MARKEY, and TALBOT, JJ.

PER CURIAM. Pursuant to MCR 7.215(H), a special panel has been convened to resolve a conflict between this case, *Doe v Dep't of Corrections,* 236 Mich App 801 (1999), and *Neal v Dep't of Corrections (On Rehearing),* 232 Mich App 730; 592 NW2d 370 (1998).

We find the reasoning found in the majority opinion in *Neal* and the concurrence in *Doe, supra* at 815, to be persuasive and consistent with established rules of statutory construction.

It has been argued that the Legislature could not have intended that the statutory prohibition against discrimination found in the Civil Rights Act (CRA), MCL 37.2101 *et seq.*; MSA 3.548 (101) *et seq.*, and the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, be applied to prisoners and prisons because of the ramifications associated with such application.[1] That may be so, but this Court does not have the liberty to change the meaning of statutory language that is plain and clear, nor can we ignore established rules of statutory construction. If it is the intent of the Legislature not to have these statutes applied to prisoners and prisons, then it is incumbent on the Legislature to draft and enact statutes that so provide. In these cases, we find that the Legislature has not done so.

Reversed and remanded for further proceedings consistent with this opinion and with *Doe v Dep't of Corrections, supra.*

GRIBBS, J., (*dissenting*). I respectfully dissent.

The instant case is a class action brought by prisoners under the jurisdiction of the Department of Corrections who, pursuant to an MDOC policy directive, were denied placement in community residential programs on the basis of their HIV-positive status. Along

---

[1] After submission and argument in this case, the Legislature has amended certain provisions of the CRA and the PWDCRA. The effect of these amendments is not before the Court and we render no opinion regarding this amended legislation.

with other claims, plaintiffs alleged that the policy directive violated the Persons with Disabilities Civil Rights Act[1] (PWDCRA), MCL 37.1101 *et seq.*;    MSA 3.550(101) *et seq.* The trial court granted defendant's motion for summary disposition and dismissed the PWDCRA claim. A panel of this Court reversed the trial court's decision because it was bound to follow *Neal v Dep't of Corrections (On Rehearing)*, 232 Mich App 730; 592 NW2d 370 (1998)   (*Neal II*), pursuant to MCR 7.215(H).   *Doe v Dep't of Corrections*, 236 Mich App 801 (1999).   A special panel has been convened to resolve the conflict between this case and *Neal II.*

Unlike the majority, I find the reasoning of the majority opinion in *Neal v Dep't of Corrections*, 230 Mich App 202; 583 NW2d 249 (1998) (*Neal I*), the dissenting opinion in *Neal II, supra* at 743, and the majority opinion in *Doe, supra*, persuasive.

I do not believe prisoners and inmates fall within the ambit of "public service" as set forth in the PWDCRA, and in the Civil Rights Act (CRA), MCL 37.2101 *et seq.*;   MSA 3.548(101) *et seq.* The outcome of this issue turns on the interpretation of statutory language. When interpreting statutes, the fair and natural import of the terms is employed, in view of the subject matter of the law. *In re Wirsing*, 456 Mich 467; 573 NW2d 51 (1998).

The PWDCRA provides in part:

> Except where permitted by law, a *person* shall not:
> (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a *place of public accommodation or public service* because of a handicap that is unrelated to

---

[1] Formerly the Handicappers' Civil Rights Act.

the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids. [MCL 37.1302(a); MSA 3.550(302)(a) (emphasis added).]

The statute defines "place of public accommodation":

(a) "Place of public accommodation" means a business, educational institution, refreshment, entertainment, recreation, health, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. [MCL 37.1301(a); MSA 3.550(301)(a).]

The statute *attempts* to define "public service":

(b) "Public service" means a public facility, department, agency, board or commission, owned, operated, or managed by or on behalf of this state or a subdivision of this state, a county, city, village, township, or independent or regional district in this state, or a tax exempt private agency established to provide service to the public. [MCL 37.1301(b); MSA 3.550(301)(b).]

The various panels of this Court have struggled to determine what public service means. Does it mean service to the public? Who is the public? Are prisoners included?

Subsection 301(a) states in pertinent part: " 'Place of public accommodation' means a business [or] educational institution . . . whose . . . accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.1301(a); MSA 3.550(301)(a).

I note with interest that the plaintiffs in this action complain that they were denied placement in *commu-*

*nity* residential programs, *camps*, and *farms* on the basis of their HIV-positive status. Plaintiffs do not argue a violation of subsection 301(a), which deals expressly with accommodations, obviously because of its concluding words "*otherwise made available to the public.*" (Emphasis added.) Clearly, prisoners are not incarcerated in accommodations that are made available to the public. In fact, in *Neal I* the parties conceded that a prison is not "a place of public accommodation."

Subsection 301(b) states in pertinent part: " 'Public service' means a public facility, department, agency . . . or a tax exempt private agency established to provide service to the public." MCL 37.1301(b); MSA 3.550(301)(b).

Thus, rather than relying on the statutory definition of public accommodations, plaintiffs now turn to subsection 301(b) seeking a remedy for prisoners and inmates under a broad reading of "public service" in that section. In the supplemental brief on appeal, addressed to this conflict panel, plaintiffs argue that the *Doe* majority was incorrect in its conclusions that public service means service to the public. The discussion by plaintiffs' brief posits the question for this panel:

> In an attempt to distinguish the Michigan Department of Corrections from the other covered state agencies or departments, the *Doe* majority panel asserts that the "key phrase" of the definition of public service is the phrase "established to provide service to the public" and reads this phrase as modifying all proceeding [sic] parts of the definition. Because the panel believes that prisons, and presumably community treatment centers, were not established to provide a service to the public (at least not a public that includes prisoners), they conclude that Michigan Depart-

ment of Corrections, a state agency, is not a public service under this Definition. *Doe v MDOC*, Slip Op. At 4.

However, a careful reading of Section 301(b) shows that the key phrase relied upon by the *Doe* majority panel is used to modify what immediately proceeds [sic] it . . . *"a tax-exempt private agency,"* not the preceding terms, which include all state owned and operated facilities and departments. Section 301(b) defines a public service as any "public facility, department [or] agency . . . owned, operated, or managed by or on behalf of the state, . . . *or* a tax-exempt private agency established to provide services to the public." MCL 37.2301(b) (emphasis added). Section 301(b) does not establish an additional requirement that each and every public facility, department, or agency also must be shown to have been established to provide service to the public. Rather all such organizations qualify as do those tax-exempt private agencies which have been established to provide service to the public.

The majority panels' [sic] restrictive interpretation is contrary to the basic rules of statutory construction. Only if the comma was placed after private agency, could one read the requirement "established to provide service to the public" as modifying all of the prior terms:

"The absence of a comma after 'private agency' in both the PWDCRA's and CRA's definitions of 'public service' supports that the phrase 'established to provide service to the public' modifies only 'a tax-exempt private agency.' *See, Eskridge and Frickey Legislation, Statutory Interpretation*, Chapter 7, Section 2, P644."

Without debating or disagreeing with the principle of statutory interpretation as discussed in the concurring opinion of *Doe* and accepting the principle as correct, we are now left with the need to define "public service," the first two words of subsection 301(b). But for the absence of a comma, the definition or meaning of "public service" would include the prior terms and the phrase "established to provide service to the public" would modify all preceding terms and it

would be clear that prisoners do not provide service to the public by their incarceration.

Instead we are left without a definition of the term "public service." When a term is not defined, its "commonly used meaning" controls. *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111, 112, 114; 595 NW2d 832 (1999). I conclude that the clear and obvious definition of public service can only mean service to the public provided by persons, agencies, or institutions.

The majority in *Neal I* addressed this issue and correctly concluded that prisons, "in their dealings with prisoners," do not provide a service to the public. *Neal I, supra* at 210. This Court in *Doe, supra*, agreed with *Neal I* that "it could perceive no legislative intent to extend the dictates of the Civil Rights Act to prisoners." *Id.* at 209. I agree with the conclusion of the panel in *Doe, supra*, that "the Court's rationale for rejecting a prison as a place of public service is just as applicable to the [Handicappers' Civil Rights Act, now the PWDCRA] as it is to the Civil Rights Act."

It is important to observe that subsection 301(b) does not indicate which buildings or agencies are included within the scope of the act, nor does it define the individuals that are or are not covered by the act. It merely purports to define "public service" and, as can be readily inferred from this Court's conflicting opinions, the intended definition is nullified by the lack of a comma. *Neal I, supra* at 213.

Notwithstanding the placement of commas and the emphasis of previous analyses, the meaning of the

statutory definition contained in subsection 301(b) is clear:[2]

> Prisons are not established to provide service to the public (at least not to a public that includes prisoners). Indeed, they are designed to do just the opposite—to keep incarcerated individuals from the public. [*Neal, supra* at 214.]

Because I am convinced that prisoners incarcerated in prisons do not perform a public service, it follows that prisons are not included in the meaning of "public service" and that prison inmates are not protected under either the Civil Rights Act or the PWDCRA. For this reason I would reject the holding of *Neal II* and adopt the conclusions reached by the majority in *Doe*. Accordingly, I would affirm the trial court's order granting defendant's motion for summary disposition of this issue.

KELLY, J., concurred with GRIBBS, J., in dissent.

---

[2] After submission and argument in this case, the Legislature amended certain provisions of the CRA and the PWDCRA. The effect of these amendments is not before this Court, and we render no opinion regarding this amended legislation. The Legislature's action has no bearing on my conclusion that the statutory intent in this matter is clear, even without the recent amendments.