DOE v DEPARTMENT OF CORRECTIONS (ON REMAND)

Docket No. 200810. Submitted May 24, 2001, at Lansing. Decided December 28, 2001, at 9:00 A.M.

Jane Doe and Joan Roe, on behalf of current or former state prison inmates, brought a class action in the Ingham Circuit Court against the Department of Corrections, alleging that a department policy directive that denies HIV-positive inmates placement in community residential programs, camps, and farms violates the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.* The court, Peter D. Houk, J., granted summary disposition for the department, ruling the PWDCRA was inapplicable to prisons and prisoners. The Court of Appeals, GRIFFIN, P.J., and MCDONALD, J. (WHITE, J., concurring), reversed, stating that it was constrained by MCR 7.215(H), now MCR 7.215(I), to hold that a prison is a public service within the meaning of the PWDCRA for the same reasons that the majority in *Neal v Dep't of Corrections (On Rehearing)*, 232 Mich App 730 (1998), decided that a prison is a public service within the meaning of the Civil Rights Act, MCL 37.2101 *et seq.* The Court of Appeals, following a poll of its judges, issued an order vacating the Court of Appeals opinion in this case and convening a special panel to resolve the conflict that would have been created between the panels in *Neal (On Rehearing)* and *Doe* but for the provisions of MCR 7.215(H). 236 Mich App 801 (1999). The special panel, HOEKSTRA, P.J., and DOCTOROFF, MURPHY, MARKEY, and TALBOT, JJ. (GRIBBS, and M. J. KELLY, JJ., dissenting), decided that the majority in *Neal (On Rehearing)* and the concurring judge in *Doe* correctly decided that a prison is a public service within the meaning of the civil rights acts and that if it is the intent of the Legislature not to have civil rights statutes apply to prisons and prisoners, it must draft and enact statutes that so provide. 240 Mich App 199 (2000). The Supreme Court, in lieu of granting the defendant leave to appeal, remanded the matter to the special panel and directed the special panel to consider whether 1999 PA 201 retroactively applies to bar the plaintiffs' claims. 1999 PA 201 amended § 301 of the PWDCRA, MCL 37.1301, to exclude from the statutory definition of "public service" state or county correctional facilities with respect to actions or decisions regarding individuals serving sentences of imprisonment. 463 Mich 982 (2001).

After consideration by the conflict resolution panel on remand, the Court of Appeals *held*:

The 1999 amendment of the PWDCRA does not apply retroactively so as to bar the plaintiffs' preenactment cause of action.

1. Four rules guide in determining whether a new act applies to a preenactment cause of action. First, is there specific language in the new act that states that it should be given retrospective or prospective application. Second, a statute is not regarded as operating retrospectively solely because it relates to an antecedent event. Third, a retrospective law is one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past. Fourth, a remedial or procedural act that does not destroy a vested right will be given effect where the injury or claim is antecedent to the enactment of the statute.

2. The second rule is not at issue in this case inasmuch as that rule has been interpreted by the Supreme Court to relate to measuring the amount of entitlement provided by a subsequent statute in part by services rendered pursuant to a prior statute.

3. With respect to the first rule, the Legislature has indicated an intent that 1999 PA 201 have retrospective application. The Legislature did so by stating in the enacting language of 1999 PA 201 that the amendatory act is curative and intended to correct any misinterpretation of legislative intent in this Court's opinion in *Doe* and that the amendatory act reflects the Legislature's original intent that individuals serving sentences of imprisonment in state or county correctional facilities not be within the purview of the PWDCRA.

4. Rule three prohibits retroactive application of 1999 PA 201 to the plaintiffs' cause of action. Such retroactive application would impair the plaintiffs' vested right to their accrued cause of action under the PWDCRA.

5. Rule four provides that a remedial or procedural statute may operate retrospectively if it does not take away vested rights. A statute significantly affecting a party's substantive rights should not be applied retroactively merely because it can be characterized in a sense as "remedial." In this context, "remedial" should only be employed to describe legislation that does not affect substantive rights. 1999 PA 201 affects substantive rights and therefore cannot operate retrospectively.

Reversed and remanded for further proceedings.

HOEKSTRA, P.J., with DOCTOROFF and MARKEY, JJ., concurring, wrote separately to state that the inclusion of the word "curative" and the phrase "original intent of the legislature" in the promulgating lan-

guage of 1999 PA 201 does not constitute a clear expression by the Legislature that 1999 PA 201 be given retroactive application. The language does not necessarily indicate that the Legislature intended to cure retroactively but may merely indicate an intent to cure prospectively.

CIVIL RIGHTS — PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — PRISONS AND PRISONERS.

The statute that amended the Persons With Disabilities Civil Rights Act to exclude state or county correctional facilities from places of public service covered by the act with respect to actions or decisions regarding individuals serving sentences of imprisonment does not apply retroactively to prisoners' causes of action that accrued under the act before the amendment was enacted (1999 PA 201, MCL 37.1301).

*Deborah LaBelle* and *Jeffrey Dillman*, for the plaintiffs.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mark Matus*, Assistant Attorney General, for the defendant.

Amici Curiae:

*Mark A. Cody*, for Michigan Protection and Advocacy Services, Inc.

*Michael Steinberg* and *Mary Moss*, for American Civil Liberties Union Fund of Michigan.

*Sandra Girard* and *Maia Justine Storm*, for Prison Legal Services of Michigan, Inc.

ON REMAND

Before: HOEKSTRA, P.J., and DOCTOROFF, MURPHY, MARKEY, SMOLENSKI, WHITBECK, and TALBOT, JJ.[1]

---

[1] Judges SMOLENSKI and WHITBECK substituted for now retired Judges ROMAN S. GRIBBS and MICHAEL J. KELLY, who participated in our original decision in this case.

PER CURIAM. In our previous opinion,[2] the majority of a special panel of this Court resolved the conflict between *Neal v Dep't of Corrections (On Rehearing) (Neal II)*[3] and *Doe v Dep't of Corrections*[4] by holding that the reasoning in *Neal II* was consistent with established rules of statutory construction. Defendant Michigan Department of Corrections appealed to the Michigan Supreme Court. In lieu of granting the department's application for leave to appeal, the Court remanded the case to this panel to consider whether the claims of plaintiffs Jane Doe and Joan Roe are barred because recent amendments (1999 PA 201) of the Persons With Disabilities Civil Rights Act (PWDCRA)[5] should be applied retroactively to this case.[6] Pursuant to the directive from the Supreme Court, we now address the retroactivity issue that we previously considered unnecessary for our disposition. We conclude that the 1999 amendment of the PWDCRA does not apply retroactively so as to bar plaintiffs' preenactment cause of action.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This is a class action brought in 1990 by current or former prisoners under the jurisdiction of the department on behalf of all prisoners who, pursuant to department policy, were denied placement in community residential programs, camps, and farms on the basis of their HIV-positive status. Among other consti-

---

[2] See *Doe v Dep't of Corrections*, 240 Mich App 199; 611 NW2d 1 (2000).

[3] *Neal v Dep't of Corrections (On Rehearing)*, 232 Mich App 730, 743; 592 NW2d 370 (1998).

[4] *Doe v Dep't of Corrections*, 236 Mich App 801 (1999).

[5] MCL 37.1101 *et seq.*

[6] See 463 Mich 982 (2001).

tutional claims, plaintiffs alleged that the department's policy directive, PD-DWA-42.08, governing the "control of communicable blood-borne diseases (AIDS, Hepatitis B)," violated the Handicappers Civil Rights Act, now the PWDCRA. The trial court granted the department's motion for summary disposition and dismissed plaintiffs' PWDCRA claim. After the trial court issued a final order, plaintiffs filed a claim of appeal in this Court.

The original *Doe* panel's review of the trial court's resolution of plaintiffs' PWDCRA claim involved construing the statutory definition of "public service." The original *Doe* panel's decision to reverse the trial court's grant of summary disposition and remand the case for trial was compelled by this Court's earlier resolution of *Neal II*, a class action brought in part under the Civil Rights Act[7] in which female inmates incarcerated by the department alleged that male corrections personnel had systematically engaged in a pattern of sexual harassment.

In pertinent part, the PWDCRA provides that

> a person shall not . . . [d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or *public service* because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids.[8]

"Public service," in turn, was defined in the act as

---

[7] MCL 37.2101 *et seq.*

[8] MCL 37.1302(a) (emphasis added).

a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of this state or a subdivision of this state, a county, city, village, township, or independent or regional district in this state or a tax exempt private agency *established to provide service to the public.*[9]

In *Neal v Dep't of Corrections (Neal I),*[10] Judge O'CONNELL authored a majority opinion holding that correctional facilities are not "places of public service," making the Civil Rights Act inapplicable to prisons.[11] Judge O'CONNELL observed that the "key phrase" in § 301 of the Civil Rights Act was "established to provide service to the public"[12] and reasoned that "[p]risons are not established to provide service to the public (at least not to a public that includes prisoners)."[13] Indeed, Judge O'CONNELL stated that prisons are designed to do "just the opposite—to keep incarcerated individuals from the public."[14]

Judge MACKENZIE dissented. She would have applied a liberal construction of the statutory language to instead reach the opposite conclusion that the department fell within the broad statutory definition of "public service."[15]

---

[9] MCL 37.1301(b) (emphasis added).

[10] *Neal v Dep't of Corrections,* 230 Mich App 202; 583 NW2d 249 (1998).

[11] The parties conceded that a prison is not a "place of public accommodation," which is defined in the act in part as "a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or *otherwise made available to the public.*" See *Neal I, supra* at 212; MCL 37.2301(a) (emphasis added).

[12] *Id.* at 213.

[13] *Id.* at 214.

[14] *Id.*

[15] *Neal I, supra* at 216-221.

In *Neal II*, Judge MACKENZIE authored the majority opinion and held that the Civil Rights Act was applicable to prisoners. The majority in *Neal II* relied on reasoning in *Pennsylvania Dep't of Corrections v Yeskey*[16] that inmates are members of the public and that civil rights acts are to be liberally construed to provide the broadest possible remedy. The majority drew a direct analogy between the phrase "public entity" used in the federal Americans with Disabilities Act and the phrase "public service" used in the Civil Rights Act, concluding that the reasoning in *Yeskey* therefore applied equally to the issue in *Neal II* involving the Civil Rights Act. The majority held that "[o]nly by reading 'private club, or other establishment not in fact open to the public' in its most restrictive, literal sense, may a correctional facility be deemed to be 'not open to the public.' "[17] Further, the majority noted that when the Legislature has seen fit to exclude prisoners from the provisions of a statute, it has specifically done so.[18] In dissent, Judge O'CONNELL readopted his position in *Neal I* and found that *Yeskey* did not require a different result because the definition of public entity in the Americans with Disabilities Act differed from the definition of public service used in the Civil Rights Act.[19]

Hence, the original majority of the panel in *Doe* found itself constrained by MCR 7.215(H), now 7.215(I), to follow the majority opinion in *Neal II* for

---

[16] *Pennsylvania Dep't of Corrections v Yeskey*, 524 US 206; 118 S Ct 1952; 141 L Ed 2d 215 (1998).

[17] *Neal II, supra* at 738.

[18] *Id.* at 740.

[19] *Id.* at 743-749. The department applied for leave to appeal from this Court's decision in *Neal II* to the Michigan Supreme Court, but its application remains pending. See 630 NW2d 332 (2001).

its resolution of the PWDCRA issue in this case.[20] The majority reversed the trial court's grant of summary disposition to the department and remanded the matter for trial. However, the original panel stated that were it permitted, it would instead affirm in part and reverse in part for the reasons set forth in the majority opinion in *Neal I* and Judge O'CONNELL's dissenting opinion in *Neal II.* Consequently, this conflict panel was convened in July 1999 to resolve the conflict between *Neal II* and the opinion issued in *Doe.*

In December 1999, the Governor signed 1999 PA 201, which in pertinent part amended § 301 of the PWDCRA. 1999 PA 201 amended § 301 to include the following italicized phrase in the definition of "public service":

> "Public service" means a public facility, department, agency, board, or commission owned, operated, or managed by or on behalf of this state or a subdivision of this state, a county, city, village, township, or independent or regional district in this state or a tax exempt private agency established to provide service to the public, *except that public service does not include a state or county correctional facility with respect to actions or decisions regarding an individual serving a sentence of imprisonment.*[21]

The enacting language of 1999 PA 201 provided the following:

> This amendatory act is curative and intended to correct any misinterpretation of legislative intent in the court of appeals decision in *Doe v Department of Corrections*, 236 Mich App 801 (1999). This legislation further expresses the original intent of the legislature that an individual serving a

---

[20] *Doe v Dep't of Corrections*, 236 Mich App 801 (1999).

[21] MCL 37.1301(b) (emphasis added).

sentence of imprisonment in a state or county correctional facility is not within the purview of this act.

The effective date of the act was March 10, 2000. On March 3, 2000, this conflict panel issued its opinion. The majority of this conflict panel adopted the majority opinion in *Neal II* that the Civil Rights Act was applicable to prisoners, holding that the reasoning was consistent with established rules of statutory construction.[22] This panel stated, "[i]f it is the intent of the Legislature not to have these statutes applied to prisoners and prisons, then it is incumbent on the Legislature to draft and enact statutes that so provide."[23] However, this conflict panel noted that after submission and argument in this case, the Legislature amended certain provisions of the Civil Rights Act and the PWDCRA. The panel opined that "[t]he effect of these amendments is not before the Court and we render no opinion regarding this amended legislation."[24]

Judges GRIBBS and KELLY dissented from the majority of this conflict panel, opining that "the clear and obvious definition of public service can only mean service to the public provided by persons, agencies or institutions"[25] and therefore that the majority in *Neal I* had correctly concluded that prisons, "in their dealings with prisoners,"[26] do not provide a service to the public.

---

[22] See *Doe v Dep't of Corrections*, 240 Mich App 199; 611 NW2d 1 (2000).

[23] *Id.* at 201.

[24] *Id.* at 201, n 1.

[25] *Id.* at 206.

[26] *Id.*

The department applied for leave to appeal to the Michigan Supreme Court from this conflict panel's opinion. In lieu of granting the department's application for leave to appeal, the Michigan Supreme Court remanded the matter to this conflict panel, stating the following:

> In lieu of granting leave to appeal, the case is remanded to the Court of Appeals with the direction that the special panel which decided this case consider whether plaintiffs' claims are barred because recent amendments (1999 PA 201) to the Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, should be applied retroactively to this case. See *Plaut v Spendthrift Farm* [sic], 514 US 211 [115 S Ct 1447; 131 L Ed 2d 328] (1995). The opinion after remand is to be filed with the Clerk of the Supreme Court. Jursidiction is retained.[27]

This Court subsequently ordered the parties to brief the retroactivity issue highlighted by the Michigan Supreme Court in its remand order. Plaintiffs filed a brief on remand as well as a reply brief to the department's brief on remand. Amicus curiae Michigan Protection and Advocacy Service, Inc., filed a short brief that either adopted or echoed many of plaintiffs' arguments.

## II. STANDARD OF REVIEW

Whether the 1999 amendment of the PWDCRA should be applied retroactively to plaintiffs' preenactment cause of action is a question of law that this Court reviews de novo.[28]

---

[27] 463 Mich 982 (2001).

[28] See *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001).

### III. RETROACTIVITY

#### A. THE PROMULGATING LANGUAGE

As noted above, effective March 10, 2000, the Legislature amended the PWDCRA to specifically exclude incarcerated prisoners from the class of persons entitled to damages under the act. The language of the statute is not at issue. Rather, we must determine the meaning of the promulgating language. Again, as noted above, in enacting 1999 PA 201, the Legislature provided the following:

> This amendatory act is curative and intended to correct any misinterpretation of legislative intent in the court of appeals decision in *Doe v Department of Corrections*, 236 Mich App 801 (1999). This legislation further expresses the original intent of the legislature that an individual serving a sentence of imprisonment in a state or county correctional facility is not within the purview of this act.

#### B. THE RETROACTIVITY "RULES"

In *In re Certified Questions (Karl v Bryant Air Conditioning Co)*,[29] the Supreme Court outlined four guiding principles or "rules" for determining when the Legislature intends for a new act to apply to a pre-enactment cause of action.

> First, is there specific language in the new act which states that it should be given retrospective or prospective application. See headnote no. 1, *Hansen-Snyder Co v General Motors Corp*, 371 Mich 480; 124 NW2d 286 (1963). Second, "[a] statute is not regarded as operating retrospectively

---

[29] *In re Certified Questions (Karl v Bryant Air Conditioning Co)*, 416 Mich 558; 331 NW2d 456 (1982).

[solely] because it relates to an antecedent event." *Hughes v Judges' Retirement Board*, 407 Mich 75, 86; 282 NW2d 160 (1979). Third, "[a] retrospective law is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." *Hughes, supra*, p 85; *Ballog v Knight Newspapers, Inc*, 381 Mich 527, 533-534; 164 NW2d 19 (1969). Fourth, a remedial or procedural act which does not destroy a vested right will be given effect where the injury or claim is antecedent to the enactment of the statute. *Rookledge v Garwood*, 340 Mich 444; 65 NW2d 785 (1954).[30]

The second rule is not at issue here because the Michigan Supreme Court has interpreted second rule cases as related to measuring the amount of entitlement provided by a subsequent statute in part by services rendered pursuant to a prior statute.[31] However, we will separately address the applicability of the remaining three rules to this case. We hold that application of the third and fourth rules dictates the conclusion that 1999 PA 201 should not be applied retroactively and that plaintiffs' preenactment cause of action is therefore not barred.

C. THE FIRST RULE: "IS THERE SPECIFIC LANGUAGE IN THE NEW
ACT WHICH STATES THAT IT SHOULD BE GIVEN RETROSPECTIVE
OR PROSPECTIVE APPLICATION?"

Applying the first rule, we find that the Legislature included language in the new act suggesting that it intended for the act to have retrospective application. Although 1999 PA 201 does not use the word "retro-

---

[30] *Id.* at 570-571.

[31] *Id.* at 571.

active," we cannot fail to notice the Legislature's statements that it promulgated the act as an expression of its "original" intent and that it intended to "cure" this Court's earlier decision. However, our analysis does not end here. Whether the Legislature indeed balanced the benefits of retroactivity against the potential for disruption or unfairness is a query specifically contemplated by application of rules three and four to this case. Application of these two latter rules compels us to conclude that it would be improper to apply the 1999 amendment retroactively.

### D. THE THIRD RULE: "A RETROSPECTIVE LAW IS ONE WHICH TAKES AWAY OR IMPAIRS VESTED RIGHTS ACQUIRED UNDER EXISTING LAWS, OR CREATES A NEW OBLIGATION AND IMPOSES A NEW DUTY, OR ATTACHES A NEW DISABILITY WITH RESPECT TO TRANSACTIONS OR CONSIDERATIONS ALREADY PAST."

Rule three defines those retroactive situations that are not legally acceptable. Specifically, a law may not apply retroactively if it abrogates or impairs vested rights, creates new obligations, or attaches new disabilities regarding transactions or considerations already past.[32] In *Frank W Lynch & Co v Flex Technologies, Inc,*[33] the Michigan Supreme Court held that the presumption of prospective application was "especially true" where retroactive application of a statute would impair vested rights, create a new obligation and impose a new duty, or attach a disability with respect to past transactions.

In this case, plaintiffs claim a vested right in their cause of action under the PWDCRA. A cause of action becomes a vested right when it accrues and all the

---

[32] *Id.* at 572.

[33] *Lynch, supra* at 583.

facts become operative and known.[34] Plaintiffs' cause of action accrued and all the facts became operative and known before the effective date of 1999 PA 201. Retroactive application of the amended definition of "public service" would impair plaintiffs' cause of action under the PWDCRA, because prisons would be excluded as places of public service prohibited from discriminating on the basis of disability. Accordingly, we conclude that the new statute is within the general proscription of rule three.

### E. THE FOURTH RULE: "A REMEDIAL OR PROCEDURAL ACT WHICH DOES NOT DESTROY A VESTED RIGHT WILL BE GIVEN EFFECT WHERE THE INJURY OR CLAIM IS ANTECEDENT TO THE ENACTMENT OF THE STATUTE."

In defining those retrospective situations that are acceptable, the fourth rule establishes the corollary to the general proscription found in rule three.[35] The fourth rule provides that a remedial or procedural statute may operate retrospectively if it does not take away vested rights.[36]

The Michigan Supreme Court has held that a statute significantly affecting a party's substantive rights should not be applied retroactively merely because it can also be characterized in a sense as "remedial."[37] "Remedial," in this context, should only be employed to describe legislation that does not affect substantive rights.[38] The legislation in this case affects substantive

---

[34] *Karl, supra* at 572-573.

[35] *Id.* at 576.

[36] *Id.*

[37] *Lynch, supra* at 585.

[38] *Id.*

rights and therefore cannot operate retrospectively according to the fourth rule.

F. CONCLUSION

In sum, according to the rules announced in *Karl,* we hold that application of the 1999 amendment to the facts of this case would be an improper retroactive application because § 301 of the PWDCRA, as amended, is not remedial but would impair vested rights. We also conclude that 1999 PA 201 does not violate art 3, § 2 of the Michigan Constitution, which would preclude the Legislature from reversing or setting aside a judgment entered by a court.[39] Accordingly, we answer the question posed by the Michigan Supreme Court on remand in the negative: plaintiffs' preenactment cause of action is not barred by the 1999 amendment of the PWDCRA.

Reversed and remanded for further proceedings.

HOEKSTRA, P.J. *(concurring).* I agree with the majority's conclusion that § 301 is prospective in application and join in its reasoning in all but part III C of its opinion. I write separately to express my opinion on the application of the "first rule" from *In re Certified Questions (Karl v Bryant Air Conditioning Co),* 416 Mich 558, 570-571; 331 NW2d 456 (1982).

The first rule poses the following query: "is there specific language in the new act which states that it should be given retrospective or prospective application." *Id.* at 570. In considering the promulgating lan-

---

[39] See *Plaut v Spendthrift Farm, Inc,* 514 US 211; 115 S Ct 1447; 131 L Ed 2d 328 (1995). See also *Quinton v General Motors Corp,* 453 Mich 63, 75; 551 NW2d 677 (1996).

guage of 1999 PA 201, I look for guidance in our Supreme Court's recent opinion in *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578; 624 NW2d 180 (2001). There, our Supreme Court strove to "reemphasize the strong presumption against the retroactive application of statutes in the absence of a clear expression by the Legislature that the act be so applied." *Id.* at 588.

As examples of the requisite "clear expression by the Legislature," the Court highlighted two statutes containing specific language on retroactive application. The Court cited MCL 141.1157, which provides that "[t]his act shall be applied retroactively," and MCL 324.21301a, which provides that "[t]he changes in liability that are provided for in the amendatory act that added this subsection shall be given retroactive application." *Lynch, supra* at 584. These statutes leave no doubt about the Legislature's intentions for the application of these specific statutes or about the Legislature's general ability to make clear its intention regarding the prospective or retroactive application of a statute. Consequently, I find it significant in this case that the Legislature omitted the word "retroactive" in 1999 PA 201.[1]

Unlike the majority, I am not persuaded that inclusion of the word "curative" and the phrase "original intent of the legislature" in the promulgating language sufficiently evidences an intent by the Legislature to make the act retroactive. This language does not nec-

---

[1] Applying *Lynch, supra*, this Court in *Travis v Preston*, 247 Mich App 190, 197-198; 635 NW2d 362 (2001), also found it significant that there was an absence of a "clear expression" by the Legislature in amending the Right to Farm Act and therefore rejected the defendants' argument that the amended language should be retroactively applied.

essarily indicate that the Legislature intended to cure *retroactively* but may merely indicate an intent to cure from this point forward. See, e.g., *Rivers v Roadway Express, Inc*, 511 US 298, 306-308; 114 S Ct 1510; 128 L Ed 2d 274 (1994). Retroactivity raises special policy concerns, making the choice to enact a statute that responds to a judicial decision quite distinct from the choice to make the responding statute retroactive. *Id.*

In my opinion, 1999 PA 201 does not contain language that specifically tells this Court that the intent of the Legislature was for the act to be applied retroactively. Had the Legislature intended for the amendment to have retroactive effect, it easily could have inserted the word "retroactive" in the act as it has on previous occasions in other acts.

DOCTOROFF and MARKEY, JJ., concurred.