# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* STANLEY A. SENEKER TRUST.

---

MARCELLA SENEKER,

              Appellant,

v

JP MORGAN CHASE BANK, N.A., Trustee of
the STANLEY A. SENEKER TRUST, STEPHEN
A. SENEKER, MICHAEL J. SENEKER, MARK
G. SENEKER, SARAH M. SENEKER, ANNE E.
DUNLOP, and MARY M. LYNEIS, Successor
Trustee of the STANLEY A. SENEKER TRUST,

              Appellees,

and

LINDA MENNA and MARCELLA LINAHAN,

              Intervenors.

UNPUBLISHED
February 26, 2015

Nos. 317003 & 317096
Oakland Probate Court
LC No. 2013-348544-TV

---

Before: DONOFRIO, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

In these consolidated appeals, appellant, Marcella Seneker, appeals as of right from the probate court's orders holding that it had subject-matter jurisdiction over a trust created by Stanley A. Seneker and granting a petition for limited supervision to allow the trustee to change the situs of the trust, remove JP Morgan Chase Bank, N.A., as trustee, and appoint Mary M. Lyneis as successor trustee. Because the trial court erred in concluding that it had subject-matter jurisdiction over this case, we reverse.

The decedent, Stanley A. Seneker, established the Stanley A. Seneker Trust Agreement (the Trust), dated August 14, 1974. Appellees, the children of Stanley, are named trust beneficiaries as is appellant, Stanley's surviving spouse. The Trust was amended on multiple occasions, in part to account for the Stanley's marriage to appellant. Stanley had been a resident

-1-

of Florida for approximately 17 years at the time of his death in 2012. Following a dispute regarding the terms of the Trust, appellees filed a petition in the Oakland County Probate Court seeking interpretation and instruction of the Trust, as well as removal of JP Morgan Chase Bank, N.A. (JP Morgan), the successor trustee upon Stanley's death. Appellant filed a limited appearance to challenge the probate court's exercise of jurisdiction, claiming that the principal place of administration of the Trust was in Florida. The probate court granted the request to remove JP Morgan as trustee and appoint Mary M. Lyneis as the successor trustee. With regard to the issue of subject-matter jurisdiction, counsel for appellant argued at the hearing that Florida statutory law controlled, and the principal place of administration of the trust was not appropriately removed to Michigan. The probate court held that it had subject-matter jurisdiction.

Appellant argues that the probate court erred by concluding that it had subject-matter jurisdiction.[1] We agree.

"Subject matter jurisdiction in particular is defined as the court's ability to exercise judicial authority over that class of cases; not the particular case before it but rather the abstract power to try a case of the kind or character of the one pending." *Campbell v St John Hosp*, 434 Mich 608, 613-614; 455 NW2d 695 (1990) (citation and internal quotations omitted). "When a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void." *Fox v Bd of Regents*, 375 Mich 238, 242; 134 NW2d 146 (1965). The plaintiffs, in this case, appellees, bear the burden of establishing subject-matter jurisdiction. *Phinney v Perlmutter*, 222 Mich App 513, 521; 564 NW2d 532 (1997). "Probate courts are courts of limited jurisdiction. Const 1963, art 6, § 15. The jurisdiction of the probate court is defined entirely by statute." *In re Wirsing*, 456 Mich 467, 472; 573 NW2d 51 (1998).

Appellees point out that MCL 700.7203(1) grants Michigan probate courts broad and exclusive jurisdiction over "proceedings in this state brought by a trustee or beneficiary that concern the administration of a trust . . . ." However, MCL 700.7205(1) provides that, "[i]f a party [such as appellant in this case] objects, the court shall not entertain a proceeding under [MCL 700.7203] that involves a trust that is registered *or that has its principal place of administration in another state*[.]"[2] (Emphasis added). Appellant argues, and we agree, that the Trust's principal place of administration is in Florida and, therefore, the Michigan probate court was without subject-matter jurisdiction over appellees' petition.

Under both Michigan and Florida trust law, a trust's "principal place of administration" is defined as the trustee's usual place of business, or if the trustee has no such place of business, his

---

[1] "[W]hether a court has subject-matter jurisdiction is a question of law reviewed de novo." *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 278; 931 NW2d 204.

[2] MCL 700.7205(1)(a) and (1)(b) provide two exceptions to this provision. Subsection (1)(a) applies where "[a]ll appropriate parties could not be bound by litigation in the courts of [Florida] and subsection (1)(b) applies where "[t]he interests of justice would otherwise be seriously impaired." We conclude that neither exception applies in this case.

residence.  FSA 736.0108(2); MCL 700.7209(1).  Appellant does not dispute that, at the time the Trust was created in 1974, Stanley, as the sole trustee, resided in Michigan and, therefore, the principal place of administration of the trust was in Michigan.  In July 1997, however, Stanley amended and completely restated the Trust.  By this time, Stanley had become a resident of Florida, as stated in the preamble to the restated 1997 Trust, which refers to "STANLEY A. SENEKER, of Naples, Florida."  This amendment and restatement was prepared, executed, witnessed, and notarized in Florida, where, at the time, both Stanley and appellant resided.  Stanley remained the sole trustee and, therefore, the principal place of administration of the Trust was relocated to Florida.  Subsequent to this occurrence, Stanley amended the Trust on multiple occasions prior to his death in 2012.  Each amendment took place entirely in Florida, where Stanley continued to reside, and retained Stanley as the sole trustee.  The Trust did not explicitly specify a principal place of administration and appellees do not contend that Stanley had a "usual place of business" in any other jurisdiction during the relevant times.  Thus, at the time of Stanley's death, the principal place of administration of the Trust was in Florida.

Appellees assert, however, that as successor trustee upon Stanley's death, JP Morgan validly transferred the principal place of administration of the Trust to Michigan, thus providing the Michigan probate court with subject-matter jurisdiction.[3]

The provision of the Trust (the ninth and final amendment) concerning the transfer of the principal place of administration provides in relevant part:

> Changing Situs of Trust.  The TRUSTEE shall have the power to transfer or relocate the Trust's principal place of administration and the situs of the property of any trust created under this Agreement to another county or state or to a jurisdiction outside of the United States.  If necessary, the TRUSTEE may commence appropriate judicial proceedings to effectuate a transfer of situs. . . .

Appellant does not contend that JP Morgan was completely without authority to transfer the principal place of administration.  Rather, appellant asserts that JP Morgan was required to comply with FSA 736.0108(6) and (7), which require that a trustee seeking to transfer provide notice to all qualified beneficiaries and suspends the trustee's authority to transfer should one of those beneficiaries object within 60 days.[4]  JP Morgan did not provide such notice in this case.

---

[3] "We review de novo the proper interpretation of a trust." *In re Stan Estate*, 301 Mich App 435, 442; 839 NW2d 498 (2013).  Issues of statutory interpretation are also reviewed de novo. *Id*.

[4] FSA 736.0108 provides in relevant part:

> (6) The trustee shall notify the qualified beneficiaries of a proposed transfer of a trust's principal place of administration not less than 60 days before initiating the transfer.  The notice of proposed transfer must include:

> (a) The name of the jurisdiction to which the principal place of administration is to be transferred.

Appellees argue that such notice was not required because the above provision of the Trust trumped the notice requirements of FSA 736.0108(6) and (7).

"When interpreting a trust, the [] court's objective is to ascertain and give effect to the intent of the settlor. The intent of the settler is to be carried out as nearly as possible." *Stan Estate*, 301 Mich App at 442 (quotation marks and citation omitted). As appellees note, the requirements of FSA 736.0108(6) and (7) are not always mandatory and only apply "[e]xcept as otherwise provided in the terms of the trust[.]" FSA 736.0105(1). See also FSA 736.0105(2)(f). Thus, we are charged with determining whether Stanley intended that the above Trust provision should override the notice provisions of FSA 736.0108(6) and (7). We conclude that he did not.

First, as discussed, the notice requirements apply "except as otherwise provided" in the Trust and there is no language in the ninth and final amendment of the Trust explicitly providing that the requirements did not apply. Second, the final version of the Trust modified the provision that appellees rely upon as controlling. Specifically, an earlier version of the Trust stated that the trustee could maintain the situs of the property of the Trust and transfer the situs at any time "*in the Trustee's absolute discretion.*" (Emphasis added). Stanley's removal of this language in the final version of the Trust demonstrates an intent to limit the discretion of the trustee in transferring the principal place of administration so that said discretion would no longer be "absolute." Third, Stanley clearly contemplated that a transfer might require the resort to judicial process, as evidenced by the language, "If necessary, the TRUSTEE may commence appropriate judicial proceedings to effectuate a transfer of situs."[5] Fourth, although not dispositive, we note that in the ninth amendment of the Trust, Stanley changed the Trust's definition of "state" from Michigan to Florida and included a provision stating, "This agreement shall be governed by and

        (b) The address and telephone number at the new location at which the trustee can be contacted.

        (c) An explanation of the reasons for the proposed transfer.

        (d) The date on which the proposed transfer is anticipated to occur.

        (e) The date, not less than 60 days after the notice is provided, by which the qualified beneficiary must notify the trustee of an objection to the proposed transfer.

        (7) The authority of a trustee to act under this section without court approval to transfer a trust's principal place of administration is suspended if a qualified beneficiary files a lawsuit objecting to the proposed transfer on or before the date specified in the notice. The suspension is effective until the lawsuit is withdrawn.

[5] While this clause was contained in earlier amendments of this provision, it does not alter the fact that Stanley contemplated that judicial process might be necessary to transfer the principal place of the Trust's administration.

-4-

construed in accordance with the law of the State, as defined above . . . ." Thus, based on the language of the relevant Trust provision and the surrounding circumstances, we conclude that the relevant Trust provision did not override JP Morgan's responsibility to comply with the notice requirements of FSA 736.0108(6) and (7) prior to transferring the Trust's principal place of administration to Michigan.

In sum, at the time of Stanley's death, the principal place of administration of the Trust was in Florida and JP Morgan, as successor trustee, was not allowed to transfer that principal place of administration without complying with the requirements of FSA 736.0108(6) and (7). Thus, the trial court was without subject-matter jurisdiction to entertain appellees' petition under MCL 700.7205. Accordingly, the probate court's conclusion to the contrary is reversed, rendering all its subsequent rulings in this case void. See *Fox*, 375 Mich at 242.

Reversed.

/s/ Pat M. Donofrio
/s/ Karen Fort Hood
/s/ Douglas B. Shapiro